### In re CONLEY.

(District Court, N. D. Georgia, N. W. D.    December 8, 1902.)

#### No. 49.

1. BANKRUPTCY—RIGHT TO DISCHARGE—DESTRUCTION OF PARTNERSHIP BOOKS.
The destruction by a bankrupt, at a time when he was contemplating the filing of a petition in bankruptcy, of the books of account of a firm of which he had formerly been a member, and which were material to a proper understanding of his financial condition, is ground for refusing him a discharge.

In Bankruptcy. On application for discharge.

Pritchard & Sizer, for objectors.
F. W. Copeland, for bankrupt.

NEWMAN, District Judge. This case is now before the court on objections to the discharge of the bankrupt, upon the following grounds: (1) That with fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy he failed to keep any books of account or records from which his true financial condition might be ascertained; (2) that with fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy he destroyed the books of the firm of Hall & Conley, of which he was a

member, and to the business of which he succeeded; (3) that while a bankrupt he concealed from his trustee property belonging to his estate in bankruptcy; and (4) that he had made false oaths in and in relation to his proceedings in bankruptcy.

The facts which are gathered from the examination of the bankrupt before the referee at a creditors' meeting are substantially these: For some time prior to August, 1899, the bankrupt had been in the grocery business in Chattanooga, Tenn., with W. F. Hall, under the firm name of Hall & Conley. During the early part of August, 1899, he purchased the interest of W. F. Hall in the business for $725, and gave him therefor seven notes, one for $125 and six for $100 each, payable at intervals of 30 days after the sale. He also assumed and agreed to ·pay all of the indebtedness of the firm of Hall & Conley. The testimony of W. F. Hall is that all of the debts of the firm of Hall & Conley were paid at the time of the transfer, except one small debt, which was paid the day following. The bankrupt in his deposition denies this, and claims that there was quite a large sum still due by the firm of Hall & Conley; but on August 10, 1899, a few days after the transfer, he made a signed statement to the Mercantile Agency of R. G. Dun & Co. showing that he had a stock of goods worth $3,000 cash valuation, accounts and bills receivable considered good amounting to $800, and cash on hand and in bank amounting to $300, and that he owed nothing except the notes to W. F. Hall, amounting to $725; making his net worth at the time, over and above his liabilities, $3,375. Between August 10 and September 5, 1899, the bankrupt bought new goods to the amount of about $2,000, and also borrowed in money about $1,300; $500 from his aunt Mrs. Stovall, $400 from the Chattanooga National Bank, and $400 from a man named Waters. On September 5, 1899, he sold out his stock of goods to his father, J. R. Conley, for $2,521 cash. A suit was brought by his creditors in the chancery court of Hamilton county, Tenn., to set aside this sale upon the ground of fraud. The sale was set aside, and the goods taken possession of and sold under order of the court, and the proceeds distributed to the creditors of the bankrupt. The facts show that the bankrupt borrowed in cash, as above stated, during the month of August, $1,300, and received in cash from his father for the stock of goods $2,521, and that he collected from accounts due the firm of Hall & Conley, according to his statement, $300, making an aggregate of $4,121. He claims that of this amount he repaid to his father $1,450, paid to his aunt, Mrs. Stovall, $510, lost $200 in a drunken spree in Birmingham, and spent on hotel bills, etc., $218.50, making a total of $2,378.50. This leaves a balance of cash which he is shown to have received of about $1,743, and of this amount he claims to have paid $1,700 on the debts of Hall & Conley. He states that he carried the books of the firm of Hall & Conley from Chattanooga to his father's house at Rossville, Ga., and there destroyed them. He also acknowledged that at the time he destroyed the books he was contemplating filing a petition in bankruptcy.

It is claimed for the objectors that if the books of Hall & Conley were in existence they would either corroborate or disprove the statement of the bankrupt that he paid debts of the firm of Hall & Conley

to the amount of $1,700 after the dissolution of the firm, and that the inference, therefore, is that the bankrupt destroyed the books for the purpose of concealing his true financial condition.

I think the above is a fair statement of the facts developed on the hearing before the referee, so far as material to the present question. The destruction of books of account with the intention of concealing the true financial condition of the bankrupt is a ground, under the bankruptcy act, for denying his discharge. Under this evidence it is conceded by the bankrupt that he destroyed the books of account of Hall & Conley. While these books were not the books of account of the bankrupt individually, they were the books of account of a firm of which the bankrupt was a member, which it seems fair to conclude from this evidence would have thrown light on his true financial condition. How much the bankrupt collected from accounts due the firm of Hall & Conley, and how much he paid out, or whether he paid anything or not, would have been important in determining whether he was making an honest and true statement of his financial condition in the present bankruptcy proceedings. I think this alone would be sufficient ground for denying the bankrupt's discharge.

It is unnecessary to pass upon the other grounds urged against a discharge. It will be denied upon the ground that the bankrupt willfully and intentionally, as shown by the evidence, destroyed books of account material to a proper understanding of his financial condition. The discharge is denied.