**In the Matter of Roger Anthony WATSON, Debtor.**

**Bentley C. ADAMS, Jr., Plaintiff,**

v.

**Roger Anthony WATSON, Defendant.**

**Bankruptcy No. 89–53238. Adv. No. 90–5059.**

United States Bankruptcy Court, M.D. Georgia, Macon Division.

Dec. 17, 1990.

---

Danny L. Akin, Macon, Ga., for plaintiff.

Homer M. Scarborough, Jr., Macon, Ga., for defendant.

ROBERT F. HERSHNER, Jr., Chief Judge.

## STATEMENT OF THE CASE

Roger Anthony Watson, Debtor, Defendant, filed a petition under Chapter 7 of the Bankruptcy Code on December 13, 1989.

Bentley C. Adams, Jr., Plaintiff, filed a "Complaint Objecting to Discharge of Debtor" on May 11, 1990. Defendant filed a timely answer. A trial was held on October 2, 1990. The Court, having considered the evidence presented and the arguments of counsel, now publishes its opinion.

## FINDINGS OF FACT

Defendant and Allan Adams were partners in a used car business known as T. Watson Motors. The business operated for about three years until it closed in October or November 1989. Defendant and Mr. Adams managed the day-to-day affairs of the business. Mr. Adams is Plaintiff's son. Both Defendant and Mr. Adams were involved in the purchasing and selling of cars and collecting money from customers. Defendant kept most of the records for the business until his wife came to work there in July 1989. About the only records that Mr. Adams dealt with were the preparation of state sales tax returns, which were prepared quarterly from information given to him by Defendant.

The business was profitable during the first year or so of operation. During the second year, the business started borrowing money. In February 1989, Defendant and Mr. Adams borrowed $25,000 from Plaintiff. The promissory note required that they repay the loan in thirty-six monthly payments of $836.35 each. They gave Plaintiff a security interest in all property and accounts receivable of the business. Plaintiff filed a UCC–1 financing statement to perfect his security interest.

In May 1989, Defendant borrowed $10,800 from Charles L. Short, Inc.[1] The promissory note requires Defendant to make weekly payments of $490.90. The repayment term is twenty-two weeks. The indebtedness is secured by certain "Auto Notes and Auto Titles," which were attached to the promissory note.

Defendant borrowed $13,000 from his wife and $2,700 from his sister in 1989.

---

**1.** Charles L. Short, Inc. is also known as Commercial Finance. Mr. Adams did not sign this promissory note.

These funds were used to operate the business. Defendant, Mr. Adams, or both, also borrowed money from local banks to operate the business.

The business's federal income tax returns show that gross sales were $171,418 in 1988 and $68,058 in 1989. The business had a tax loss of $50,110 in 1988 and $36,294 in 1989.

The business financed most of the cars that it sold and received weekly or monthly payments from customers. Each week, Defendant prepared a ledger of accounts receivable on a legal pad. The ledger contained the customer's name and account balance. When the customer made a payment, the payment was entered on the ledger. About three-fourths of these payments were made in cash. Most payments were recorded in a receipt book until July 27, 1989. Thereafter, customers were given handwritten receipts. Most receipts were signed by Defendant.

Photocopies of ledgers that Defendant prepared from January 21, 1989, through July 29, 1989, were presented at trial. The ledgers show that twelve to twenty-three customers made payments each week. Most payments were in the amount of $40 to $70. Weekly income from customer payments averaged $880. The ledgers show that total income for this time period from customers was $24,666. No ledgers or customer receipts showing payments made after July 29, 1989, were presented at trial.

A "Sales Contract and Security Agreement" was signed by the customer and the salesman when a car was sold. Twenty-three original sales contracts dated from January 13, 1989, through September 5, 1989, were presented at trial. Photocopies of four other sales contracts dated 1989 were presented. Two 1988 sales contracts also were presented. In addition, the business sold a few cars for cash.

Defendant and Mr. Adams wrote cash tickets for gasoline and food purchased on behalf of the business. These cash tickets were stuffed into the office desk. Payroll, bills, and loans were paid by cash and by check. No actual bills were presented at trial. Defendant did not keep a "general business ledger."

About $700 to $1,000 of business cash was spent each week to purchase cocaine. Defendant, Allan Adams, Houston Story,[2] and perhaps others, used the drugs.

Juanita Watson, Defendant's wife,[3] came to work at the business in the latter part of July 1989. She came to help the business file a late tax return that was due on August 15, 1989. The Court is persuaded that Mrs. Watson is a credible witness.

Mrs. Watson testified that when she came to work at Defendant's business, the business records were in "total shambles." She believes, however, that the records were relatively complete. Over a period of several weeks, she used the bank statements, checkbooks, cash receipts, receipt books, bills of sale, and other records to prepare spread sheets or ledgers. She stated that the business overhead was about $11,000 per month before salary draws. This amount includes about $3,000 per month that was spent on cocaine. She testified that neither Defendant nor Mr. Adams had any idea as to the business's overhead. Mrs. Watson testified that she had no way of knowing how much cash was going through the business. After Mrs. Watson came to work, Defendant turned over most of the record keeping functions to her.

Mrs. Watson prepared ledgers on business expenses for the months of January 1989 through October 1989. These ledgers were completed based on the business records that she was able to find. Mrs. Watson testified that the ledgers and records that she prepared were turned over to Charlie L. Short, Inc. when the business closed. She testified that about fourteen accounts receivable were turned over to Charlie L. Short, Inc. The balance owed on these accounts receivable was $8,845.50. Several sales contracts were turned over to Charles L. Short, Inc. She does not know

---

2. Mr. Story worked at the business from March 1989 until September 1989.

3. Mrs. Watson, Defendant's estranged wife, did not join in Defendant's bankruptcy petition.

what happened to the other records. Mr. Adams testified that he came into the business office one night and "they had moved everything out," including all the records.

Mrs. Watson's paychecks from her previous employer, Belk's, were used to pay her family's household bills until she came to work at Defendant's business. At some point, she essentially turned over her paychecks from Belk's to Defendant to keep his business going.

The business maintained three checking accounts at area banks. Bank statements for most of the months between January 1989 and October 1989 were presented at trial. Three monthly statements are missing. Total deposits and debits during 1989 were about $152,000. Some of the business's cash, however, was paid directly for bills and cocaine and did not go through the checking accounts. Copies of many of the cancelled checks and deposit slips are attached to the bank statements. The checking accounts were closed by Mr. Adams when he left the business in September 1989.

Copies of about 530 cash receipts issued by the business from January 27, 1989, through July 27, 1989, were presented at trial. Almost all of the receipts appear to be issued to customers for weekly payments on cars. Most of the receipts were signed by Defendant. The receipts total about $34,486. After July 27, 1989, customers were given handwritten receipts. Some cash transactions were not recorded in the receipt book.

Two ledgers showing cars purchased by the business from January 3, 1989, through August 22, 1989, were presented at trial. These ledgers apparently were prepared by Mrs. Watson. The ledgers show that forty-nine or fifty cars were purchased for about $58,500.

Plaintiff believed that the security agreement signed by Defendant and Mr. Adams gave him a security interest in an office desk. Plaintiff testified that Defendant treated the desk as his own property. Mr. Adams testified that Defendant told him that Defendant owned the desk. Defendant asserts that the desk did not belong to him or the business. Defendant asserts that the desk had been his father's and now belongs to his mother. The desk is now in Defendant's possession in South Carolina. Defendant's bankruptcy schedules do not list the desk as property held for another person.

Defendant was a "confidential informant" for Merrill Greathouse, Sheriff of Upson County, Georgia. Defendant was paid several thousand dollars by Mr. Greathouse for his work as an informant. Defendant contends that Mr. Greathouse still owes him $5,000. Defendant did not schedule this $5,000 as an account receivable or anywhere else on his bankruptcy schedules. Defendant asserts that he was told the money he received as an informant was not to be reported to anyone.

Defendant filed an amendment to his bankruptcy schedules on October 2, 1990. In this amendment, Defendant states that he received money from law enforcement agents for information concerning drug dealers from August 1989 through November 1989. Defendant states that he was instructed not to disclose this information because it would interfere with ongoing criminal investigations. Defendant states that at the time of the filing of his bankruptcy petition, the money was not in his hands or within his control.

At the time Defendant filed his bankruptcy petition, he had two cars, a 1980 Toyota Tercel and a 1985 Ford Escort. Defendant did not list these or any other cars in his bankruptcy schedules. Defendant contends that the Escort was not running and that the Tercel was a $650 car. Defendant had the Ford Escort fixed and sold it after filing his bankruptcy petition.

Defendant readily admits that he did not keep the best records while operating the business. In his schedule of affairs, Defendant makes the following statement: "Records are not complete as good records were not kept by the business, T. Watson Motors." Defendant asserts that he did not destroy any business records and that he has given Plaintiff's counsel all the records he has. Defendant also notes that he has moved three times.

## CONCLUSIONS OF LAW

[1, 2] Plaintiff contends that Defendant's discharge should be denied under sections 727(a)(3),[4] 727(a)(4)(A),[5] and 727(a)(5)[6] of the Bankruptcy Code.[7] A creditor objecting to the discharge of a debtor bears the burden of proving the objection. But once the creditor meets the initial burden by producing evidence establishing the basis for his objection, the burden shifts to the debtor to satisfactorily explain the loss. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984). The burden is on the creditor to prove the debtor's culpability by clear and convincing evidence. *See Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986) (construing 11 U.S.C.A. § 523(a)(2)(A) (West Supp.1990)).

Plaintiff first contends that Defendant's discharge should be denied under section 727(a)(3), which provides:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

11 U.S.C.A. § 727(a)(3) (West 1979).

In *Milam v. Wilson (In re Wilson)*,[8] this Court stated:

Section 727(a)(3) is intended "to enable creditors, with the assistance of proper books and records, to ascertain the true status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." 4 Collier on Bank-

ruptcy ¶ 727.03[1] (15th ed. 1983). Section 727(a)(3) requires that a debtor produce some accurate written information that the creditors and trustee can rely on in tracing the debtor's financial history during the period preceding his bankruptcy. *Tucker v. Devine (In re Devine)*, 11 B.R. 487, 4 Collier Bankr. Cas.2d 732 (Bkrtcy.D.Mass.1981). Records are adequate when they are kept "so as to reflect, with a fair degree of accuracy, the debtor's financial condition and in a manner appropriate to his business." 4 Collier on Bankruptcy ¶ 727.03[3] (15th ed. 1983) (footnotes omitted).

33 B.R. at 691.

Judge Ginsberg, in his publication on bankruptcy, states:

The debtor need not intentionally have failed to keep or produce books and records to be denied a discharge; intent is not an element. Nor need it be shown that the debtor's lack of books and records in any way contributed to the filing of the bankruptcy petition.

1 *R. Ginsberg, Bankruptcy* § 11.02[d] (2d ed. 1989) (footnotes omitted).

■ In determining whether the debtor failed to keep adequate records, the court should consider the sophistication of the debtor, his business experience, the size of the business, and all other relevant factors. *Calisoff v. Calisoff (In re Calisoff)*, 92 B.R. 346, 356 (Bankr.N.D.Ill.1988) (citing *International Shoe Co. v. Lewine*, 68 F.2d 517, 518 (5th Cir.1934)).

A merchant actively engaged in credit transactions should ordinarily have books and records. *Bankruptcy* § 11.02[d] n. 67 (citing *Savannah Valley Carpets v. Ellison (In re Ellison)*, 34 B.R. 120 (Bankr.M.D.Ga.1983)).

---

**4.** 11 U.S.C.A. § 727(a)(3) (West 1979).

**5.** 11 U.S.C.A. § 727(a)(4)(A) (West 1979).

**6.** 11 U.S.C.A. § 727(a)(5) (West 1979).

**7.** Plaintiff's complaint does not contend that Defendant's discharge should be denied under 11 U.S.C.A. § 727(a)(4)(A) (West 1979). Defendant, however, did not object when Plaintiff

asserted this issue at trial, and the Court is persuaded that it was tried by express or implied consent. *See* R.Bankr.P. 7015; Fed.R. Civ.P. 15(b).

**8.** 33 B.R. 689 (Bankr.M.D.Ga.1983), *aff'd,* Civ. Action No. 83–416–2 (M.D.Ga. Sept. 18, 1985).

Defendant apparently had a problem with cocaine. Business cash was used to purchase cocaine. Defendant certainly would not want to keep records on these purchases. But the mere fact that Defendant spent money on illegal drugs does not relieve him of his duty to maintain the required records. *See Dolin v. Northern PetroChemical Co. (In re Dolin)*, 799 F.2d 251, 253 n. 1 (6th Cir.1986).

Defendant readily admits that he kept poor records. Defendant contends that he and Plaintiff's son, Mr. Adams, shared the record keeping duties. In any business relationship involving more than one person, however, the partners will usually delegate responsibilities, including record keeping, among themselves. *Cox v. Lansdowne (In re Cox)*, 904 F.2d 1399, 1403 (9th Cir.1990). The Court is persuaded that Defendant was the partner primarily responsible for keeping records. Defendant asserts that he turned this duty over to his wife when she came to work in July 1989. The Court is not persuaded by this assertion. Defendant, as a general business partner, was responsible for keeping or seeing that the business records were kept.

The records at issue were those of Defendant's business rather than Defendant's personal records. The business records, however, are necessary to understand Defendant's financial situation.

In *In re Conley*,[9] the court stated:

While these books were not the books of account of the bankrupt individually, they were the books of account of a firm of which the bankrupt was a member, which it seems fair to conclude from this evidence would have thrown light on his true financial condition. How much the bankrupt collected from accounts due the firm of Hall & Conley, and how much he paid out, or whether he paid anything or not, would have been important in determining whether he was making an honest and true statement of his financial condition in the present bankruptcy proceedings. I think this alone would be sufficient ground for denying the bankrupt's discharge.

120 F. at 44.

It is clear that a substantial amount of cash went through Defendant's business that is not accounted for. The ledgers that Mrs. Watson prepared show that total business expenses for 1989 were $68,552.76. About $58,500 of this was for cars purchased. Mrs. Watson testified that her ledgers were completed based on the records of the business that she was able to find. The bank statements from the three bank accounts, however, show total debits during 1989 were about $152,000. Three monthly statements are missing. An unknown amount of bills were paid in cash. A large amount of business cash was used to purchase cocaine. Simply stated, it is not possible to reconcile the various records presented at trial to determine the financial condition of Defendant.

In *In re Ellison*, this Court stated:

In the eleven months prior to filing his bankruptcy case, Defendant grossed in his business $315,000. Defendant now has a duty to explain to his creditors the disposition of those funds. However, because of Defendant's lack of records, he is unable to fulfill his duty. The Court is of the opinion that in a business of the size and complexity of Defendant's, simple business sense would have caused Defendant to keep books and records sufficient to fulfill his duty. The Court cannot condone Defendant's failure to keep adequate books and records. A businessman must be accountable if he is to enter into business. Defendant, because he failed to keep sufficient books and records, ignored his duty to be accountable, and the Court therefore should not grant him a discharge in bankruptcy.

34 B.R. at 125.

Plaintiff also contends that Defendant's discharge should be denied under section 727(a)(4)(A), which provides:

(a) The court shall grant the debtor a discharge, unless—

. . . .

9. 120 F. 42 (N.D.Ga.1902).

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

11 U.S.C.A. § 727(a)(4)(A) (West 1979).

■■■ Defendant did not list in his schedules the 1980 Toyota Tercel and the 1985 Ford Escort. He clearly considered the cars to be his personal property. Defendant contends that Escort was not running and the Tercel was a $650 car. The fact that the cars may have had little value is not a defense to a material omission. It makes no difference that Defendant did not intend to injure his creditors when he failed to schedule the cars. The creditors are entitled to determine for themselves what will benefit them. *See In re Chalik,* 748 F.2d at 618.

Defendant did not schedule the office desk as property being held for another person. Nor did he schedule the $5,000 he claims that Sheriff Greathouse owes him. Defendant, on the date of trial, amended his schedules to disclose certain income received by him from law enforcement agents from August 1989 through November 1989. He has not amended his schedules to list the cars or the desk.

Finally, Plaintiff contends that Defendant's discharge should be denied under section 727(a)(5), which provides:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

11 U.S.C.A. § 727(a)(5) (West 1979).

To be satisfactory, an explanation must convince the judge. Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory. *In re Chalik,* 748 F.2d at 619.

■■■ Plaintiff has shown that significant amounts of cash went through Defendant's business. Defendant's failure to keep adequate records makes it impossible for the Court to ascertain the disposition of this cash. Defendant has failed to explain satisfactorily the loss of this cash. He gives only vague generalizations as to what happened to the money the business collected from customers. The Court is persuaded that Defendant has not carried his burden of explaining the loss of his assets. *See In re Ellison,* 34 B.R. at 125–26.

The Court is persuaded that Defendant's discharge must be denied. An order in accordance with this opinion will be entered this date.