**KOUFMAN v. SHEINWALD.**

**No. 3112.**

Circuit Court of Appeals, First Circuit.

May 23, 1936.

978

Martin Witte, of Boston, Mass., for appellant.

Jacob Wasserman, of Boston, Mass. (Arthur Theise Wasserman and Wasserman & Wasserman, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal by the bankrupt from an order of the District Court for Massachusetts, denying his petition for a discharge on the third and fifth specification of objections of the creditor, there being eight objections in all, the remaining six not being sustained.

The creditor's third objection in his specification of objections is as follows:

"3. For the reason that, with the intent to conceal his true financial condition, he has destroyed, mutilated, falsified, concealed or failed to keep books of account or records from which such financial condition and business transactions might be ascertained."

The fifth objection is:

"5. For the reason that he has failed to explain satisfactorily any losses of assets or deficiencies of assets to meet his liabilities."

Section 14b (2) of the Bankruptcy Act is the one under which the third objection was drawn, and since 1926 (11 U.S.C.A. § 32 (b) (2) has provided:

"(b) The judge shall hear the application for a discharge and such proofs and pleas as may be made in opposition thereto by the trustee or other parties in interest, at such time as will give the trustee or parties in interest a reasonable opportunity to be fully heard; and investigate the merits of the application and discharge the applicant, unless he has * *. * (2) destroyed, mutilated, falsified, concealed, or failed to keep books of account, or records, from which his financial condition and business transactions might be ascertained; unless the court deem such failure or acts to have been justified, under all the circumstances of the case."

Prior to its amendment in 1926, clause (2) of section 14b, 11 U.S.C.A. § 32 (b) (2), read:

"(2) with intent to conceal his financial condition, destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained."

And prior to 1903 clause (2) read:

"(2) with fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy, destroyed, concealed, or failed to keep books of account or records from which his true condition

might be ascertained." (11 U.S.C.A. § 32 note)

It thus appears that the word "fraudulent," the word "true" preceding the words "financial condition," and the words "and in contemplation of bankruptcy" were omitted in the amendment of 1903, and the words "with intent to conceal his financial condition" were omitted in the act of 1926, the act in force when the specifications of objections here under consideration were filed.

Such being the case, the words "with intent to conceal his true financial condition," which the third specification contained, are in legal effect stricken out.

The District Court sustained this specification of objection, the master in his report having made a general finding to the effect "that the objecting creditor has proved by a reasonable preponderance of the evidence that the bankrupt failed to keep books of account or records from which his financial condition and business transactions might be ascertained, and that, under all the circumstances of the case, taking into account particularly the magnitude and complexity of the bankrupt's affairs, such failure was not justified."

■ The master in making this finding and the District Court in approving it as a ground for denying the bankrupt's discharge evidently proceeded on the basis that the creditor's third specification of objection was restricted to the provisions of the act as it now stands. This appears from the master's report where he refused to find "whether the bankrupt failed to keep reports during the period from January, 1931, to the date of his bankruptcy *with intent to conceal* his financial condition, because under the Bankruptcy Act, as amended in 1926, it is immaterial what the intention of the bankrupt was in this regard." As the amendment of 1926 rendered the intent-to-conceal clause of the specification immaterial, the master was authorized to disregard it and treat the specification in this respect as restricted to the provisions of the act of 1926. Thus restricted, we see no reason why the findings of the master, affirmed by the District Court, do not sustain this specification.

In addition to the general finding above set out, the master made two subsidiary findings: (1) That the bankrupt kept "no records from which his financial condi-

tion and business transactions might be ascertained *subsequent* to January, 1931" (or for more than seven months preceding the filing of his petition in bankruptcy, October 3, 1931); and (2) "that such records as were kept *prior* to January, 1931, were not sufficient to enable one to ascertain his true financial condition and business transactions."

■ The general finding is based upon both of the subsidiary findings above set out; not upon the last one alone, as counsel for the appellant would have us believe. It is a comprehensive finding that meets every requirement of the statute. The subsidiary findings are not inconsistent with it but are in accord with and support it, and, the evidence not being before us in this record, we are not at liberty to question it.

The master in his general finding in effect ruled that the burden of proof, under this specification of objection, was on the objecting creditor, for in the above finding he states "that the objecting creditor has proved by a reasonable preponderance of the evidence that the bankrupt failed to keep books of account or records from which his financial condition and business transactions might be ascertained." He not only ruled that the burden of proof was on the objecting creditor, but that a reasonable preponderance of the evidence was essential to maintain that burden.

In Shanberg v. Saltzman (C.C.A.) 69 F.(2d) 262, 263, it is pointed out that the degree of proof required is "a fair preponderance of the evidence," whether the burden is upon the objecting creditor or the bankrupt. But that case holds that under the provisions of section 14 of the Bankruptcy Act [11 U.S.C.A. § 32], as it now stands, the burden of proof is on the bankrupt, the objector having shown "to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt committed any of the acts which, under section 14 (b) * * * would prevent his discharge."

■ In this case it appears that the objector has not only shown to the satisfaction of the court below that there were reasonable grounds for believing that the bankrupt had committed the acts charged in the third specification, but the master in fact found, and the District Court approved it, that the bankrupt had committed such acts. In this situation the bank-

rupt cannot complain because the burden of proof was placed on the objecting creditor rather than upon himself.

It is further contended that clause (2) of section 14b is so vague, indefinite, and obscure that it cannot be enforced and that the bankrupt should not be held to answer to a specification of objection based upon it; that the act does not point out what books of account or records shall be kept or the details of their keeping. The act contemplates that the bankrupt shall keep books of account or records "from which his financial condition and business transactions might be ascertained"; and that, if he fails, his application for discharge shall be denied "unless the court deems such failure or acts to have been justified under all the circumstances of the case."

The Court of Appeals in the Second Circuit, in Karger v. Sandler, 62 F.(2d) 80, 81, in considering the provisions of section 14b (2), 11 U.S.C.A. § 32 (b) (2), pointed out that the interests protected are those of creditors and that the bankrupt is required to take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate; that while the *test* is "loose," it is not looser than many others, for instance the standard of care in much of the law of torts; and that custom had sanctioned such test too long to question its propriety when the power is plainly created.

In Hanover National Bank v. Moyses, 186 U.S. 181, at page 192, 22 S.Ct. 857, 862, 46 L.Ed. 1113, the court considered section 14b (11 U.S.C.A. § 32 note), providing for the granting of discharges, as it then stood. It was there contended that the notice provided for in respect to granting a discharge was unreasonably short and that the right to oppose a discharge was unreasonably restricted. In answer the court said:

"Considering the plenary power of Congress, the subject-matter of the suit, and the common rights and interests of the creditors, we regard the contention as untenable. Congress may prescribe any regulations concerning discharge in bankruptcy that are not so grossly unreasonable as to be incompatible with fundamental law, and we cannot find anything in this act on that subject which would justify us in overthrowing its action."

We fail to see wherein the provisions of section 14b (2) are so vague and uncertain as to be violative of the due process clause of the Federal Constitution (Amend. 5). We think they are sufficiently definite to meet its requirements.

As to the fifth specification of objection, the master made the following subsidiary findings:

That the bankrupt for some years prior to his bankruptcy carried on three main lines of business: (1) Buying, selling, managing, and dealing in real estate; (2) the construction and alteration of buildings; and (3) the operation of a sprinkler, plumbing, and heating business which latter was done through a corporation of which he owned all the stock; that the schedules which he filed "disclosed that upon the date of the filing of the voluntary petition (October 3, 1931) his liabilities were $1,423,948.99 of which $203,816.88 were entirely unsecured"; that "his assets were listed in his schedules at $1,390,-800, but this valuation of the assets was without deducting the liens on them, and as a matter of fact the trustee has realized for the benefit of the general creditors a negligible amount." He then made the following general finding:

"The bankrupt testified that the large discrepancy between his assets and liabilities was explained by the fact that he had lost very large sums of money on the construction of several buildings in and about Boston. If I were able to give the bankrupt's testimony full credence, I would find that this was a satisfactory explanation of the deficiency of assets to meet his liabilities. The testimony of the bankrupt was, however particularly at the early hearings before me, evasive and unsatisfactory, and I am unable to find from his testimony a satisfactory explanation of the very large discrepancy between his liabilities and his assets. There is nothing in the books of the bankrupt, which have been called to my attention, which satisfactorily explains this large discrepancy, and I, therefore, find that the objecting creditor has sustained by a reasonable preponderance of the evidence the burden of proving the fifth specification of objection."

The master's report as to this specification of objection was approved by the District Court. The evidence is not before us and we must take the findings of the master as they stand. The subsidiary findings

are not inconsistent with but support the general finding. They show that the bankrupt had liabilities of nearly $1,500,000 and from his assets there was realized for the benefit of the general creditors a negligible amount. This clearly shows that there was a large discrepancy between his assets and liabilities which he was called upon to explain.

It further appears that the master had four or more hearings at which the bankrupt was undoubtedly called upon to testify, and that his testimony was evasive and unsatisfactory, and particularly so at the early hearings; that he was entirely uncooperative with the trustee in the matter of producing his books or records, and made no effort to produce some that he later produced when "he had use for such books himself to defend the objections to his petition for a discharge."

The master refused to believe the bankrupt's testimony as to the great discrepancy between his assets and liabilities which his books and records failed to explain. Having had the bankrupt before him as a witness on these several occasions and having heard his testimony, he was in a position to determine what credit should be given it, particularly where there was nothing in the books of the bankrupt which explained the large discrepancy.

Clause (7) of section 14b is the one on which this fifth specification of objection is based. It provides that the bankrupt shall be discharged "unless he * * * (7) has failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities." The fifth specification of objection follows the language of clause (7) in terms, and the findings of the master support the specification.

Under this specification and finding the same contention as to the burden and quantum of proof and the constitutionality of clause (7) of section 14b is made as was made and has been considered with reference to clause (2) of section 14b. It is unnecessary to say anything further about these matters.

The order of the District Court as to this specification must be sustained, as well as to the previous one.

The order of the District Court is affirmed, with costs in this court to the appellee.