**In re Stephen John RUSNAK, Debtor.**

**Herb GROETZINGER and Janet Groetzinger, his wife; Norbert Belsterling; Frank Pfeifer and Florence Pfeifer, his wife; William Sonnett and Ann Sonnett, his wife; Donald A. Poremski and Jeanne C. Poremski, his wife; Joseph Gargiulo; St. Gregory Eastern Orthodox Church; Jesse J. Polito, Jr.; Christopher B. Sodel; George Schexnayder; Andrew Balko; Frank Bailek, Sr.; Craig Cox; Nicholas Lorenzo; Luba Reschoff and David Boyer, Plaintiffs,**

v.

**Stephen John RUSNAK, Defendant.**

**Bankruptcy No. 88–2684.**

**Adv. No. 89–0006.**

United States Bankruptcy Court, W.D. Pennsylvania.

Feb. 22, 1990.

David K. Rudov, Lauren Fertlemes, Rudov & Stein, Pittsburgh, Pa., for plaintiffs.

Romel L. Nicholas, Gaitens, Tucceri & Nicholas, P.C., Pittsburgh, Pa., for defendant/debtor.

Joseph J. Bernstein, Bernstein & Bernstein, P.C., Pittsburgh, Pa., Chapter 7 Trustee.

Stephen I. Goldring, Office of U.S. Trustee, Pittsburgh, Pa.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is Plaintiffs' *Complaint To Determine Dischargeability of Debtor Pursuant To 11 U.S.C. § 523(a)(2)(A) or, In The Alternative, Objection To Discharge of Debtor Pursuant To 11 U.S.C. § 727(a)(2), (3) and (5).*

Plaintiffs claim that Stephen John Rusnak ("Debtor") obtained money from them by fraudulent representations; that Debtor, with intent to hinder, delay or defraud his creditors, has transferred or concealed money they loaned to him; that Debtor has failed to satisfactorily trace the proceeds of the loans; and that Debtor failed to keep books and records from which his financial condition and business transactions might be ascertained.

Debtor admits to borrowing money from Plaintiffs but denies generally that it was obtained by fraudulent representations. He denies that he transferred or concealed the funds loaned to him with intent to defraud his creditors or that he has failed to satisfactorily trace the proceeds. Finally, Debtor denies that he failed to keep accurate books and records from which his financial condition and business transactions might be ascertained.

Debtor will, for reasons set forth below, be denied a discharge pursuant to 11 U.S.C. § 727(a)(3) because he failed to keep accurate books and records from which his financial condition and business transactions might be reasonably ascertained. In light of this determination, it will not be necessary to formally address the remainder of Plaintiffs' claims against Debtor.

In an effort to be complete, however, it should be noted that had a decision not been reached on the basis of 11 U.S.C. § 727(a)(3), the Court would have relied upon other provisions of the Bankruptcy Code as a basis for denying discharge.

It is clear to the Court that this debtor has utilized a "scheme" and/or "con", wherein he would approach individuals with whom he had developed a confidence

and make a proposal. He would be specific and he was aware that his *victim* was relying upon the specifics of the proposal. It is clear from the facts and circumstances surrounding these transactions that Debtor, at the time he made the specific proposal, had no intention of fulfilling same. The Plaintiffs' testimony is clearly credible and Debtor's explanation is clearly incredible, even using a burden of proof beyond clear and convincing. Debtor intended to secure Plaintiffs' funds and would make any promise and would utilize any method to achieve that end. After receiving same, Debtor put the money to his own personal use.

In short, Debtor secured funds pursuant to a fraudulent scheme and thereafter failed to satisfactorily explain the disappearance of same. Any of the above reasons is also a basis for denial of discharge.

## I.

### FACTS

Debtor has been employed by the County of Allegheny, Pennsylvania as a plumber since 1980. His present annual salary is approximately $27,500.00. Debtor is also the sole proprietor of a business known as Rusnak Plumbing, which he started sometime in the mid–1970s. He maintained no checking, savings, money market, or charge accounts, and since 1980 has kept no books or written records for Rusnak Plumbing or any other business transactions. According to Debtor, he kept such records "in his head". Debtor has not maintained a personal checking account in his own name since approximately 1981, and had no cash receipts journal, cash disbursement journal or general ledger. He previously had maintained a general journal; however, at the time of trial it could not be located. In short, the basic records normally kept by an individual handling substantial sums of money were unavailable for review.

Plaintiffs made numerous loans to Debtor, which debt totaled approximately $375,-000.00. In every instance, Debtor approached one of the Plaintiffs and inquired whether he might borrow a specified sum

of money from them for a specific purpose purportedly relating to Rusnak Plumbing. In return for the money he borrowed, Debtor typically executed and delivered to the lender a promissory note in an amount appreciably greater than the amount they had loaned to him. None of these loans was unconditional. They were for specific purposes which Debtor represented had to do with his plumbing business.

Typically, Debtor would claim that, through his plumbing business or his position with Allegheny County, he had an opportunity to purchase a trailer containing excess plumbing supplies at a very low price. He further represented that this personalty could then be sold at a very substantial profit and the debt repaid. In truth, no trailers were ever purchased, and only at trial did Debtor recall any details relating to same. The Court is convinced that these opportunities never existed.

Debtor has, in certain instances, made partial payments to some of the Plaintiffs; however, he has not repaid the principal of those loans, let alone the full amounts due and owing under the promissory notes.

Plaintiff George Schexnayder, for instance, loaned money to Debtor on four (4) separate occasions. On October 7, 1987, October 29, 1987, and January 2, 1988, respectively, Schexnayder loaned Debtor $2,000.00, $4,000.00, and $4,000.00. Debtor represented to Schexnayder on each occasion that he wished to borrow money in order to purchase, and then to sell at a profit, construction trailers containing surplus plumbing supplies and materials. In February of 1988, Schexnayder loaned Debtor an additional $1,000.00 in order that he might purchase a truck for his plumbing business. In return for these loans, which totaled $11,000.00, Debtor executed promissory notes totaling $17,000.00. Debtor has repaid only $500.00 of the amount due and owing under the notes.

On October 21, 1985, Plaintiffs Donald and Jeanne Poremski, loaned Debtor $10,-000.00. Debtor had represented to the Poremskis that he needed the money in order to buy and sell a construction trailer con-

taining surplus plumbing equipment and supplies. In return for the loan, Debtor executed a promissory note in the amount of $10,600.00. Debtor has repaid only $3,000.00 of the amount due and owing under the note.

Plaintiffs Herb and Janet Groetzinger loaned money to Debtor on six (6) separate occasions. On November 20, 1986, November 21, 1986, and November 24, 1986, respectively, the Groetzingers loaned Debtor $7,000.00, $2,500.00, and $10,000.00. Debtor had represented to the Groetzingers in each instance that he needed the money to buy, and then sell, a construction trailer with surplus plumbing supplies and materials. In return for these three (3) loans, Debtor executed promissory notes totaling $22,000.00.

On December 4, 1986, the Groetzingers loaned another $10,000.00 to Debtor, who had represented to them that he needed that amount to purchase equipment and materials for a plumbing job in Zelienople, Pennsylvania. Debtor executed a promissory note the next day for $35,000.00, which was intended to retire the previous promissory notes and to cover the loan of the previous day as well.

Finally, on December 17, 1986 and December 22, 1986, respectively, the Groetzingers loaned Debtor $6,000.00 and $7,000.00 to enable him to complete the job in Zelienople. Debtor promised to repay $7,000.00 and $10,000.00, respectively, for the loans. No promissory notes were given for these two loans. Rather, Debtor gave the Groetzingers post-dated checks in these amounts drawn on the account of William Rusnak, Debtor's brother. Both of these checks were returned by the bank because of insufficient funds in the account.

All told, the Groetzingers loaned Debtor $42,500.00. Debtor had promised to repay them a total of $52,000.00, but has repaid only $1,000.00 of the amount due and owing.

Plaintiff Jesse Polito loaned Debtor money on thirteen (13) separate occasions. The total amount loaned to Debtor is $42,-700.00. Promissory notes were executed by Debtor on each occasion. Debtor has repaid only $22,450.00 of the amount due and owing under the promissory notes.

Plaintiffs Frank and Florence Pfeifer loaned Debtor money on seven (7) separate occasions. On December 12, 1983 and December 19, 1983, respectively, the Pfeifers loaned Debtor $6,000.00 and $6,000.00 to purchase boilers for a job in Robinson Township, Pennsylvania. On December 23, 1983 and December 24, 1983, they loaned $2,500.00 and $2,500.00, respectively, so that he could purchase equipment and supplies to complete installation of these boilers. On January 13, 1984, the Pfeifers loaned Debtor $1,000.00 so that Debtor could purchase a tractor for use in his plumbing business. On February 29, 1984 and March 28, 1984, the Pfeifers loaned Debtor $3,000.00 and $2,500.00, respectively, so that Debtor could purchase plumbing equipment and supplies for a job he claimed he was doing at Carlow College. In all, the Pfeifers loaned Debtor $23,-500.00 in return for which he executed promissory notes totaling $43,000. Debtor has repaid only $19,100.00 of the amount due and owing under the notes.

On April 21, 1987 and April 27, 1987, respectively, William and Ann Sonnett loaned Debtor $5,000.00 and $5,000.00 to enable Debtor to purchase materials and supplies for a plumbing job he allegedly was doing in Zelienople, Pennsylvania. Shortly thereafter, the Sonnetts loaned Debtor $800.00 so that he could purchase a truck for use in his plumbing business. Debtor executed promissory notes totaling $12,300.00 for these loans. On May 19, 1987, Debtor gave the Sonnetts a check for $12,800.00 in place of the promissory notes. The check, which was drawn on the account of William Rusnak, was returned by the bank because there were insufficient funds in the account. Shortly thereafter, the account was closed by the bank. Debtor then executed another promissory note in the amount of $13,000.00. On June 29, 1987, Debtor made partial payment of $5,000.00 to the Sonnetts.

On December 13, 1985 and December 19, 1985, Plaintiff Craig Cox loaned Debtor $10,000.00 and $9,000.00, respectively, so

that Debtor might purchase and sell construction trailers containing surplus plumbing supplies and materials. Shortly thereafter, Cox loaned Debtor another $4,200.00 for the same purpose. Debtor, in return, executed promissory notes totaling $26,700.00. Debtor has repaid only $16,500.00 of the amount due and owing under the notes.

As was the case with all of the other Plaintiffs discussed previously, the loans in question were not unconditional. They were made on the basis of representations by Debtor that the money was to be used for a specific business purpose. Plaintiffs have advised, and the Court believes, that the loans were made to pursue the specific business purpose. Had Plaintiffs known the true purpose contemplated by Debtor, the loans would not have been made.

Debtor did not use any of the money he borrowed from Plaintiffs for the purposes for which he represented that it was to be used. He admitted that the loan proceeds were spent for other purposes. In Debtor's own words, he used the money for other purposes because "something better came along".

According to Debtor, he transferred approximately $27,500.00 to Richard Kabany, who allegedly had purchased a golf course in Florida and was converting it into a condominium/office building complex. Debtor also testified that he gave approximately $35,000.00 to his brother, William Rusnak. These purported transfers to Kabany and Debtor's brother are not evidenced by any written agreements and are not listed on Debtor's bankruptcy schedules. In addition, Debtor testified that he spent approximately $10,000.00 on his parents and an indeterminate amount for his own personal uses. Debtor was living well beyond his means and was spending approximately $15,000.00 per year more than he was earning.

Finally, Debtor testified that he used an indeterminate amount of the money borrowed from certain of the Plaintiffs to make partial repayments to other Plaintiffs. The remainder of the $375,000.00

Debtor borrowed from Plaintiffs is unaccounted for.

On October 4, 1988, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

## II.

### ANALYSIS

Section 727(a) of the Bankruptcy Code provides that a Chapter 7 Debtor is entitled to a discharge unless one of eight conditions is met. 11 U.S.C. § 727(a)(3) sets forth one of those eight conditions:

(a) The court shall grant the debtor a discharge, unless— ...

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; ...

The purpose of this provision is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs. "It was never intended that a bankrupt, after failure, should be excused from his indebtedness without showing an honest effort to reflect his entire business and not merely a part of it." *In re Underhill*, 82 F.2d 258, 260 (2d Cir.), *cert. den'd*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936).

The main thrust of the objections to discharge set forth in § 727(a) is to furnish a vehicle whereby *abusive* conduct by a debtor can be dealt with through denial of discharge. *In re Brown*, 56 B.R. 63, 66 (Bankr.D.N.H.1985) (citations omitted).

■ Plaintiffs, if they are to prevail under this provision, must show: (1) that Debtor failed to keep or preserve books or records; and (2) that such failure makes it impossible to ascertain Debtor's financial condition and material business transactions. *Matter of Decker*, 595 F.2d 185, 187 (3rd Cir.1979). *Intent* to conceal one's financial condition is not a necessary element

to support denial of discharge for failure to keep records. *Koufman v. Sheinwald*, 83 F.2d 977, 978 (1st Cir.1936); *see also, In re Underhill, supra* at 259.

In keeping with Congressional intent to provide debtors with a fresh start, the court must be especially circumspect when dealing with the right to discharge. Hence, § 727(a) must be strictly construed against the objector and in favor of a debtor. *See In re Leichter*, 197 F.2d 955, 959 (3rd Cir.1952), *cert. den'd*, 344 U.S. 914, 73 S.Ct. 336, 97 L.Ed. 705 (1953).

■ There is no statutory requirement that a debtor keep such books and records in every instance as a condition precedent to being granted a discharge. *In re Underhill, supra* at 259. There are cases in which no duty to keep books arises. *See 4 Collier on Bankruptcy* (15th ed. 1989) ¶ 727,03[3] at p. 41 n. 31. If the occupation or business of the debtor is of a kind in which persons normally would not keep books or records, for instance, failure by the debtor to do so will not bar discharge. *Id.* at 47 n. 53.

Complete disclosure, however, *is* a condition precedent to the granting of a discharge. If such disclosure is not possible without the keeping of books or records, then the failure to keep such amounts to that failure to which § 727(a)(3) applies. *In re Underhill, supra* at 260.

What is required of the debtor is that he "take such steps as ordinary and fair dealing and common caution dictate to enable the creditors to learn what he did with this estate". *Koufman, supra* at 980. Whether a failure to keep records will be justifiable is a question of fact to be determined in each instance according to the particular circumstances of the case. *In re Underhill, supra* at 260. The key factor to consider in regard to the duty to keep books is the complexity of the transactions involved. *Moffett v. Union Bank*, 378 F.2d 10, 11 (9th Cir.1967). A showing that his transactions were not very complex *may* excuse a debtor's failure to keep books and records. *Bartolotta v. Lutz*, 485 F.2d 227, 229 (5th Cir.1973) (citations omitted).

If a debtor is required to keep books and records, it is sufficient if they are kept so as to reflect, with a fair degree of accuracy, the debtor's financial condition and in a manner appropriate to his business. *In re Brown, supra* at 67 (citations omitted).

■ The complexity of Debtor's transactions, as described above, dictates that he *should* have kept reasonable books or other written records. Because Debtor kept virtually no such books or records, it is not possible to ascertain with any degree of confidence what he did with his estate.

Debtor, by his own admission, kept virtually no books or written records either for Rusnak Plumbing, for which he solicited and purportedly borrowed the above funds from Plaintiffs, or for his own personal transactions. According to Debtor, he kept such records "in his head". No justification was offered by Debtor for his failure to keep such written records.

Debtor's oral testimony, in which he stated that he had dissipated all of the funds borrowed from Plaintiffs and in which he described how they were dissipated, is not sufficient to avoid the sanction contemplated by 11 U.S.C. § 727(a)(3). It is not enough that Debtor merely recite from records ostensibly "kept in his head" and detail from memory what transactions he engaged in and how the funds were dissipated. Records of substantial completeness and accuracy are necessary *in order that they may be checked against Debtor's oral statements. International Shoe Co. v. Lewine*, 68 F.2d 517, 518 (5th Cir.1934). Creditors, in other words, are not required to rely on a debtor's oral representations concerning these matters without also having *some independent means of substantiating such representations.*

Debtor will be denied a discharge because he failed to keep any recorded information from which his complex and nefarious transactions might be ascertained and because he did not offer any justification for such failure.

An appropriate Order will be issued.