**In re Stanley WOLFSON, Debtor.**

**Alan NISSELSON, as Trustee, Plaintiff,**

**v.**

**Stanley WOLFSON, Defendant.**

**Judith Ripps WOLFSON, Plaintiff,**

**v.**

**Stanley WOLFSON, Defendant.**

**Bankruptcy No. 90 B 10007 (BRL).
Adv. Nos. 90–5845A, 90–5855A.**

United States Bankruptcy Court,
S.D. New York.

April 27, 1992.

**280**

Brauner Baron Rosenzweig & Klein, New York City, for trustee; Robert Minkoff, of counsel.

Jill Lesser, New York City, for Judith Ripps.

Phillip Mann, New York City, for debtor.

### DECISION ON SUMMARY JUDGMENT MOTIONS FOR DENIAL OF DISCHARGE

BURTON R. LIFLAND, Chief Judge.

#### I. Dispute Summary

The plaintiffs, Judith Ripps ("Ripps") and Bankruptcy Trustee Alan Nisselson (the "Trustee") (together, the "Movants"), have brought a joint motion for summary judgment to deny the discharge of Stanley Wolfson (the "Debtor") pursuant to 11 U.S.C. § 727(a)(3), (4), (5), and (6) and Bankruptcy Rules 4004 and 7001. The Debtor cross-moved for an order pursuant to Bankruptcy Rule 7037 and Federal Rule of Civil Procedure 37 to direct each of the plaintiffs to produce documents and for the Court to deny the plaintiffs' summary judgment motion. This Court has jurisdiction over the proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the "Standing Order of Referral of Cases to Bankruptcy Judges" by the District Court dated July 10, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J).

On January 3, 1990, the Debtor filed a voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. Alan Nisselson was subsequently appointed Chapter 7 Trustee of the Debtor's estate. The other plaintiff, Judith Ripps (formerly known as Judith Ripps Wolfson), is involved in divorce proceedings with the Debtor.

A § 341(a) meeting was initially scheduled for March 9, 1990. The March 9 meeting was adjourned because the Debtor claimed his counsel could not be present. At the meeting rescheduled for April 23, 1990, the Debtor claimed to be ill and refused to answer the Trustee's questions. No counsel appeared on the Debtor's behalf. On numerous occasions the Debtor was requested to produce records for the April 23 meeting relating to his financial condition which the Trustee alleges are necessary to administer the case. At an adjourned § 341(a) meeting held on November 1, 1990, the Debtor finally agreed to supply the Trustee with certain records. The Trustee alleges that the Debtor has failed to produce several of these records and has made inconsistent statements as to the existence of many of them. The Movants therefore state that the Debtor should be denied a discharge under §§ 727(a)(3), (4) and (5) for concealing or failing to keep adequate records, withholding records from

an officer of the estate, and failing to satisfactorily explain a loss or deficiency of assets. The Debtor has denied the existence and/or the materiality of the records. He has subsequently attributed misstatements concerning existence of the records to memory loss or theft of the records by Ripps (his estranged former spouse). The Debtor asserts that the Movants' motion for denial of discharge should be denied.

On March 27, 1990, this Court entered an Order approving a Stipulation providing for turnover of a cooperative apartment by the custodian and authorizing sale of the apartment.[1] The Order directed the Trustee to take all reasonable steps to carry out the terms of the Stipulation.[2] By letter dated April 2, 1990, the Trustee directed the Debtor to vacate the apartment no later than April 16, 1990. The Debtor did not vacate the apartment until a second court order was issued on July 2, 1990. The Movants allege that, because the Debtor failed to comply with the March 27, 1990 Order of this Court, the Debtor should be denied a discharge under § 727(a)(6). The Debtor states that the March 27, 1990 Order did not actually direct him to vacate the apartment. The Debtor alleges that there was, technically speaking, no duty to vacate the apartment until the second Order was issued on July 2, 1990, expressly directing the Debtor to do so.

A canvas of the record before the Court on the motions reveals that no genuine issue of material facts exists. This case is ripe for summary judgment. The depositions, written evidence, and testimony indicate a manifest failure by the Debtor to cooperate with the Trustee and to produce the requested records. The Debtor has produced no evidence which would legitimatize his convenient assertion of stolen records. His documented misstatements

and timely lack of memory make his quest to create issues for determination at trial unavailing. Based upon the record placed before this Court and the for the reasons set forth herein, the Debtor is denied a discharge under § 727(a)(3), (4) and (5).

## II. The Standard for Summary Judgment

Federal Rule of Bankruptcy Procedure 7056 provides that "Rule 56 F.R.Civ.P. applies in adversary proceedings." Fed. R.Civ.P. 56(c) states that summary judgment shall be granted to the moving party if the court determines that:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Thus, the party moving for a summary judgment must set forth facts showing that there is no genuine issue of material fact. Once the Movant satisfies the requirements of Rule 56(c), the respondent must set forth specific facts establishing the existence of a genuine issue of material fact, mere allegations or denials of the movant's pleadings are insufficient. Fed. R.Civ.P. 56(e). See Matter of Esposito, 44 B.R. 817, 821 (Bankr.S.D.N.Y.1984).

The non-moving party is to be given the benefit of the doubt in that "all reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion." [cites omitted]. Glick v. Mirus (In re Mirus), 87 B.R. 960, 969 (Bankr.N.D.Ill.1988).

■ The affidavits, sworn examination testimony, and other evidence set forth in the record, viewed in a light most favorable to the Debtor, indicate that there is no

---

1. Judith Ripps is a creditor of the Debtor's estate and the receiver of certain assets of the Debtor. By order dated August 21, 1987, the Honorable Harold Baer Jr., Justice of the Supreme Court of the State of New York, County of New York, appointed Ripps receiver of the debtor's shares of stock in a Normandy Owners Corporation, a cooperative corporation.

2. The Order approved a stipulation between plaintiff and Trustee providing for, inter alia, the Trustee's sale of the cooperative apartment held by Ms. Ripps as receiver and authorizing the distribution of the proceeds of such sale. The Order directed the Trustee to take all reasonable steps in carrying out the terms of the stipulation, including, if necessary, causing the vacatur and sale of the cooperative apartment.

genuine issue of material fact. Furthermore, a lack of consistency drains the Debtor's counter assertions of all probative force.

## III. Denial of Discharge under § 727(a)

The Movants have brought an action to deny Wolfson's discharge pursuant to Code § 727(a)(3), (4), (5), and (6). These subsections provide that the bankruptcy court shall grant a debtor a discharge unless:

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

(6) the debtor has refused, in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

### A. The Burden of Proof under § 727(a) Exceptions to Discharge

#### 1. Case Law Prior to Grogan

Prior to the Supreme Court's decision in *Grogan v. Garner*, — U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), there was a split among and within the circuits as to the appropriate burden of proof under § 727. Most of the courts, including the Southern District of New York, chose the clear and convincing standard as the burden of proof. *MacLeod v. Arcuri (In re Arcuri)*, 116 B.R. 873, 879 (Bankr.S.D.N.Y. 1990); *Greene v. Greene (In re Greene)*, 81 B.R. 829, 834 (Bankr.S.D.N.Y.1988); *G & G Cards & Gifts, Inc. v. Berman (In re Berman)*, 100 B.R. 640, 645 (Bankr.E.D.N.Y. 1989); *Braen v. Braen (In re Braen)*, 94 B.R. 35, 40 (Bankr.D.N.J.1988); *Barnett Bank of Tampa v. Muscatell (In re Muscatell)*, 113 B.R. 72, 74 (Bankr.M.D.Fla.1990); *Adams v. Watson (Matter of Watson)*, 122 B.R. 476, 480 (Bankr.M.D.Ga.1990); *St. Luke's Hosp. of Fargo, Inc. v. Smith (In re Smith)*, 119 B.R. 714, 720–721 (Bankr. D.N.D.1990). However, a substantial number of courts applied the preponderance of the evidence standard. *Haywood Properties, Ltd. v. Jacobe, (In re Jacobe)*, 116 B.R. 463, 467 (Bankr.E.D.Va.1990); *Second Nat'l Bank v. Parker (In re Parker)*, 85 B.R. 384 (Bankr.E.D.Va.1988), *aff'd*, 879 F.2d 863 (4th Cir.1989); *Mclean v. Harlow (In re Harlow)*, 107 B.R. 528, 531 (Bankr. W.D.Va.1989); *Newton v. Essres (In re Essres)*, 122 B.R. 422, 425 (Bankr.D.Colo. 1990); *Francis v. Riso (In re Riso)*, 74 B.R. 750, 757 (Bankr.D.N.H.1987); *Cowan v. Curl (In re Curl)*, 49 B.R. 302, 304–06 (Bankr.W.D.Mo.1985); *Cobb v. Hadley (In re Hadley)*, 70 B.R. 51, 53 (Bankr.D.Kan. 1987). Some courts applied the clear and convincing standard when fraud or fraudulent conduct was involved (as under § 727(a)(2) and (4)) and applied the preponderance of the evidence standard when fraud or fraudulent conduct was not alleged (as under § 727(a)(3)). *Green Hill Corp. v. Kim (In re Kim)*, 97 B.R. 275, 281 (Bankr.E.D.Va.1989); *Hibernia Nat'l Bank v. Perez*, 124 B.R. 704, 705–706 (E.D.La.1991).

#### 2. The Grogan Decision

In *Grogan*, the Supreme Court held that the appropriate burden of proof which must be met in order to prevent the discharge of a debtor under § 523(a) of the Bankruptcy Code is the preponderance of the evidence standard. The Court based its decision upon a number of factors. Looking at the statute, the *Grogan* Court stated that "[t]he language of § 523 does not prescribe the standard of proof for the discharge exceptions." *Grogan*, 111 S.Ct. at 659. The Court then found that the "legis-

lative history of § 523 and its predecessor ... is also silent" as to the burden of proof. *Id.* The Court interpreted this silence to mean that Congress did not intend to "require a special, heightened standard of proof" under § 523. *Id.*

After concluding that both the statute and legislative history did not prescribe a burden of proof, the *Grogan* Court compared the goal of the Bankruptcy Code (to give the debtor a "fresh start") with the rights of creditors. The Court rejected the argument that a debtor has a "fundamental right" to a discharge.[3] The Court noted that, though it is true that one of the policies of the Bankruptcy Code is to give debtors a "fresh start", the opportunity for a discharge and "a completely unencumbered new beginning" is limited to an "honest but unfortunate debtor." *Id.* at 659. The Court concluded that the preponderance of the evidence standard reflects "a fair balance" between the conflicting interests of debtor and creditor.

The *Grogan* Court held that since Congress had "group[ed] together in the same subsection a variety of exceptions without any indication that any particular exception is subject to a special standard of proof", it follows that Congress intended the same standard to govern the applicability of all of the exceptions to discharge, and "[B]ecause it seems clear that a preponderance of the evidence is sufficient to establish the nondischargeability of some of the types of claims covered by § 523(a), it is fair to infer that Congress intended the ordinary preponderance standard to govern the applicability of all the discharge exceptions." *Id.* at 659–660.

The *Grogan* Court then rejected the argument that § 523(a)(2), a fraud exception, required proof by clear and convincing evidence. The Court noted that, unlike a large number of states, "Congress has chosen the preponderance standard when it has created substantive causes of action for fraud." *Id.* at 660. The Court cited the statutory history to § 727(a)(4)[4] as evidence of Congress' choice of the preponderance standard in cases where the debtor has committed a fraud on the Bankruptcy Court. *Id.*

The *Grogan* Court noted that when § 523 was added to the Bankruptcy Code in 1978 the circuit courts were split as to the appropriate burden of proof. The court stated that it would be unreasonable to conclude that Congress would have "silently endorsed" a clear and convincing standard. *Id.* at 661.

### 3. Case Law After Grogan

*Grogan* involved a motion brought under § 523(a). The court stated in dicta, however, that "Congress chose the preponderance standard to govern determinations under 11 U.S.C. § 727(a)(4), which denies a debtor the right to discharge altogether if the debtor has committed a fraud on the bankruptcy court." *Id.* at 660. Decisions subsequent to *Grogan* have increasingly applied the preponderance of the evidence standard as the appropriate burden of proof for § 727 exceptions to discharge. Districts which previously applied the preponderance of the evidence standard have continued to do so. *Malloy v. Goldstein (In re Goldstein),* 123 B.R. 514, 522 (Bankr.E.D.Pa.1991) (*"Grogan* ... strongly suggests that a "preponderance of the evidence" test should be applied in all § 727 proceedings as well as all § 523 matters."); *Bartlett Futures, Inc. v. Davis (In re Davis),* 124 B.R. 831, 833 (Bankr.D.Kan. 1991). Several districts, after considering the court's reasoning in *Grogan,* have now

---

**3.** "Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless "particularly important individual interests or rights are at stake." We have previously held that a debtor has no constitutional or "fundamental" right to a discharge in bankruptcy. We also do not believe that, in the context of provisions designed to exempt certain claims from discharge, a debtor has an interest in discharge sufficient to require a heightened standard of proof." (cites omitted) *Grogan,* 111 S.Ct. at 659.

**4.** "The fourth ground for denial of discharge is the commission of a bankruptcy crime, though the standard of proof is preponderance of the evidence." H.R.Rep. No. 595, 95th Cong. Sess. 384, reprinted in 1978 *U.S.C.C.A.N.* 5787, 6340.

chosen to apply the preponderance of the evidence standard instead of the clear and convincing standard previously utilized. *Union Bank of the Middle East, Ltd. v. Farouki (In re Farouki)*, 133 B.R. 769, 776 (Bankr.E.D.Va.1991) (choosing to "no longer follow" the clear and convincing standard applied prior to *Grogan* to exceptions involving fraud and applying the preponderance of the evidence standard to all § 727(a) exceptions.); *Kroger v. Boerner (In re Boerner)*, No. 90–06023–8P7, at *14, 1991 WL 236853 (Bankr.M.D.Fla.1991) (LEXIS, Genfed library, Bankr file) (noting that the standard, "as noted by the Supreme Court recently in dicta in *Grogan* ... is the mere preponderance of the evidence standard rather than the clear and convincing standard which was the previous standard of proof in cases under § 727 of the Bankruptcy Code."); *Hubbell Steel Corp. v. Cook (In re Cook)*, 126 B.R. 261, 265 (Bankr.E.D.Tex.1991) (Noting that although it had followed the majority of courts in applying the clear and convincing standard prior to *Grogan*, it was now "of the opinion that the preponderance of the evidence standard of proof" is appropriate under both § 523 and all § 727 actions.); *First Nat'l Bank of Gordon v. Serafini (In re Serafini)*, 938 F.2d 1156, 1157 (10th Cir.1991) (Reversing the district court application of the clear and convincing standard and concluding that, although *"Grogan* is concerned with 11 U.S.C. § 523 rather than 11 U.S.C. § 727(a)(2)", the court perceived "no good reason to apply a different standard where § 727(a)(2) is involved." "It would be incongruous to apply a "preponderance of the evidence" standard to § 523(a) and a "clear and convincing standard to § 727(a)(2). Such would be clearly at odds with the rationale in *Grogan*."); *Singer Sewing Co. v. Harmon (In re Harmon)*, No. 91–10288–B, at *10, 1992 WL 13624 (Bankr.W.D.Tenn. Jan. 10, 1992) (LEXIS, Genfed library, Bankr file) (Agreeing with the *Serafini* decision and holding that "this Court will apply the preponderance of the evidence standard to the objections" to a discharge raised under § 727(a)(3) and (5).); *United States v. Sumpter (In re Sumpter)*, 136 B.R. 690, 694 (Bankr.E.D.Mich.1991) (LEXIS, Genfed library, Bankr file) (Concluding that "the rationale of *Grogan* applies with equal force in § 727(a) actions, and ... the standard of proof by which the [objectant] must establish the elements of its cause of action under § 727(a) is by a fair preponderance of the evidence.")

An examination of the cases decided after *Grogan* indicates that no court now endorses the clear and convincing standard for all § 727(a) actions. One court applied the clear and convincing standard to a § 727(a)(2) cause of action but the preponderance of the evidence standard to a § 727(a)(4) cause of action. *March v. Sanders (In re Sanders)*, 128 B.R. 963, 967 (Bankr.W.D.La.1991). The *Sanders* court noted that the preponderance standard was appropriate for § 727(a)(4) after *Grogan* but that "[t]he Supreme Court has not addressed the issue of the standard of proof in § 727(a)(2) cases." The court interpreted the legislative history to § 727(a)(2) and (3) as merely "highlight[ing] ... that the criminal standard of proof beyond a reasonable doubt would not apply." *Id.* at n. 2. The court then continued to apply the clear and convincing standard to a § 727(a)(2) cause of action. Several decisions after *Grogan* have found it unnecessary to decide whether the appropriate burden of proof under § 727(a) is clear and convincing or a preponderance of the evidence because the evidence either sustained a finding that the higher standard was met, *Bank of India v. Sapru (In re Sapru)*, 127 B.R. 306, 317 (Bankr.E.D.N.Y.1991), *Tavormina v. Van Den Heuvel (In re Van Den Heuvel)*, 125 B.R. 846, 849–850 (Bankr. S.D.Fla.1991), or sustained a finding that even the lower standard could not be met. *Zitwer v. Kelly (In re Kelly)*, 135 B.R. 459 (Bankr.S.D.N.Y.1992) (LEXIS, Genfed library, Bankr file) (Noting that the *Grogan* decision suggests that a preponderance of the evidence standard should be applied to § 727(a)(4)(A) actions and that "it is now uncertain whether a court may require a plaintiff seeking denial of discharge under § 727(a)(4)(A) to meet the higher burden of the clear and convincing evidence standard.")

This Court agrees with the reasoning applied by the court in *Hubbell Steel Corp. v. Cook (In re Cook)*, 126 B.R. 261, 266 (Bankr.E.D.Tex.1991). *Cook* noted that in *Grogan* the Supreme Court had balanced the goal of giving the debtor a fresh start with the interest of creditors. *Cook* agreed with the reasoning applied in *Grogan* that it was "unlikely that Congress, in fashioning the standard of proof that governs the applicability of these provisions, would have favored the interest of giving perpetrators of fraud a fresh start over the interest of protecting the victims of fraud." *Grogan*, 111 S.Ct. at 659. *Cook* then found that, "since the majority of § 727 causes of action deal with upholding the integrity of the bankruptcy process rather than serving as a protective device for wronged creditors [as under § 523]", the preponderance of the evidence standard "may be even more appropriate in the context of § 727." *Cook*, 126 B.R. at 266.

█ This Court finds that the reasoning which led the Supreme Court to conclude that the preponderance of the evidence standard was the appropriate burden of proof in § 523(a) actions is equally compelling when considering § 727(a) actions. The standard establishes the "fair balance" between debtors and creditors sought by the Court in *Grogan*. A right to a discharge is not a fundamental right. *Grogan*, 111 S.Ct. at 659. Nowhere in the statute or in the legislative history is there evidence of Congressional intent to apply the higher burden of proof. Rather, the statutory history accompanying § 727(a)(4)(A) clearly implies that the preponderance of the evidence standard is to be used. Moreover, it would be unwise to apply the lower standard to § 523(a) actions and the higher standard to § 727(a) actions. Thus, this Court holds that the appropriate burden of proof under § 727(a) is the preponderance of the evidence standard.

## B. The § 727(a)(3) Cause of Action

Under § 727(a)(3) of the Bankruptcy Code, the objectant has the burden of proof on the issue of failure to keep or preserve adequate records. Once the objectant has satisfied this burden, the debtor "carries the burden of proof as to whether the failure was justified." *Esposito*, 44 B.R. at 826.

The Movants allege that the Debtor has violated § 727(a)(3) by failing to keep or preserve records. The Debtor alleges that several records were turned over to the Movants and that, consequently, accurate business records cannot be produced. Response to Local Rule 13(h) [5] Statement at 2. The Debtor admitted in his affidavit that he has been associated with "literally hundreds of corporations" over the past thirty years. The Trustee and the plaintiff each requested that the Debtor produce documents relating to the size and extent of the Debtor's estate, including documents indicating corporate ownership and tax documents. The Debtor claimed that he had either already produced the documents, a claim which he has not been able to substantiate,[6] or that he was justifiably delayed in producing documents because he was in the process of moving. Specifically, the Trustee asked the Debtor to produce

---

**5.** Local Rule 13(h) provides:

*Summary Judgment.* On any motion for summary judgment pursuant to Bankruptcy Rule 7056, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement constitutes grounds for denial of the motion.

**6.** There is precedent for denying a summary judgment motion based upon a genuine issue of fact regarding the existence of business records and whether they were turned over to the trustee. In *Miller v. Harper (In re Harper)*, 117 B.R.

306, 310–311 (Bankr.N.D.Ohio 1990), a motion for summary judgment was denied where the debtor claimed he had turned records over to the plaintiff and plaintiff claimed that the records had not been produced. This resulted in a genuine issue of material fact as to the existence of the records. However, this case is distinguishable from the *Harper* case. In *Harper*, the debtor was able to produce debris which he contended were the remaining records, and the debtor stated that he had turned over "voluminous records" in a state court action. Neither of these claims can be made by the debtor here.

personal income tax returns for the years 1983–1989. The Debtor promised to deliver the tax returns as soon as possible, implying that the returns existed. Two months later the Debtor produced the tax returns, but they were dated February 12, 1991— only twelve days before the date of production. It can be inferred that the returns did not exist when the Debtor promised to produce them. The Debtor responded that misstatements as to the existence of the returns caused no damage to the estate. However, it is not for the Debtor to determine the materiality or relevance of financial records.

There are other examples of the Debtor's failure to keep accurate records. There are no records pertaining to any appraisal of a valuable clock which the Debtor admitted to owning. The Debtor stated in his affidavit that the clock was appraised at $3,500. However, the Debtor never produced any documents relating to the appraisal or his subsequent sale of the clock. The Debtor claims that the documents do not exist and that their absence does not harm the estate in any way.

The Movants requested records relating to the ownership of an aircraft. The Debtor initially denied that he had any interest in an aircraft, and then, in a deposition, admitted to having sold an interest in an aircraft. No documents were ever produced regarding the ownership or sale of an aircraft.

The Movants requested that the Debtor produce documents relating to his ownership of various companies. The Debtor variously stated that he was never involved with the respective companies, that no documents existed regarding his relationship with the companies, and that his involvement with the companies ended over six years ago.

■ Section 727(a)(3) is intended to allow the trustee and creditors to accurately determine the property in the debtor's estate and to compile a complete record of the debtor's relevant and material financial and business transactions. Though the statute

does not require "the keeping of an impeccable system of bookkeeping . . . or records so complete that they could satisfy an expert in business," *Esposito*, 44 B.R. at 826 (quoting *Johnson v. Bockman*, 282 F.2d 544, 546 (10th Cir.1960)), the test is " 'whether there [is] available written evidence made and preserved from which the present financial condition of the [debtor], and his business transactions for a reasonable period in the past may be ascertained.' " *Esposito*, 44 B.R. at 827 (quoting *In re Underhill*, 82 F.2d 258, 260 (2d Cir.), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936)). For a discharge to be denied under § 727(a)(3) it must be shown that the debtor either failed to keep or preserve records or that the debtor unjustifiably destroyed such records. It must then be shown that such failure or destruction makes it unduly burdensome to determine the debtor's financial condition and material business transactions. *Groetzinger v. Rusnak (In re Rusnak)*, 110 B.R. 771 (Bankr.W.D.Pa.1990); *Matter of Decker*, 595 F.2d 185, 187 (3rd Cir.1979); *Esposito*, 44 B.R. at 827. Intent to conceal one's financial condition is not a necessary element for the denial of discharge under § 727(a)(3). *See Esposito*, 44 B.R. at 827; *Rusnak*, 110 B.R. at 775–776; *Koufman v. Sheinwald*, 83 F.2d 977, 978 (1st Cir.1936); *In re Underhill*, 82 F.2d at 259.

■ The Debtor attributes the lack of business records to memory loss, immateriality of the transactions, theft by his spouse (one of the plaintiffs), and loss of records by the Trustee.[7] However, it is the Debtor who has the burden of producing records from which his financial condition may be ascertained. If the documents cannot be produced, "[t]he issue of whether Debtor has satisfactorily explained the loss, is a question of fact." *Harper*, 117 B.R. at 311. A debtor has a duty to take reasonable precautions for the preservation of financial records. *Keamy v. Hyder (Hyder)*, 38 B.R. 467, 471 (Bankr.D.Mass.1984). The Debtor must show that the inadequate business records were justified under the

---

7. See the Debtor's sworn *Declaration in Opposition* to the Plaintiff's motion for summary judg-

ment and in support of the Debtor's cross motion at 2–3, 5–6, 8, dated Jan. 24, 1992.

circumstances. If the lack of records is not adequately explained, the debtor is not entitled to a discharge. *Hyder* at 471. In the instant case, given several opportunities, the Debtor's final explanation for the lack of documentation demonstrates a lack of reliability in his written and verbal statements—a shortcoming conceded by his own counsel[8]. The Debtor failed to produce evidence indicating that the business records were turned over to the Trustee. Though some documents were ultimately produced, the Debtor failed to make an honest effort to fully disclose his affairs; the Debtor revealed only a portion of his financial affairs, and only when compelled to do so.[9]

In considering the Debtor's explanation of the missing records, the court should consider the "Debtor's education, the sophistication of the Debtor's business, the size and complexity of the Debtor's business, the Debtor's personal financial structure, and any special circumstance that may exist." *Singer Sewing Co. v. Harmon (In re Harmon)*, No. 91–10288–B, 1992 WL 13624, at *5; at *13 (Bankr. W.D.Tenn. Jan. 10, 1992) (LEXIS, Genfed library, Bankr file). Wolfson is a knowledgeable debtor. His financial history indicates that he is a sophisticated business man. He has held positions within a number of companies. The positions include officer, director, shareholder, and consultant. He has been involved in the purchase and sale of corporations. He has had control over a bank account of approximately $500,000. He was involved in the bankruptcy proceedings of one of the largest failed law firms as a member of the Finley, Kumble creditors' committee.[10] Debtors

who are involved in a large number of transactions must maintain records from which their financial condition can be ascertained. *Esposito*, 44 B.R. at 827; *In re Silverman*, 10 B.R. 727, 731 (Bankr. S.D.N.Y.1981); *In re Trogdon*, 111 B.R. 655 (Bankr.N.D.Ohio 1990); *Underhill* 82 F.2d at 259–260. *See Groetzinger v. Rusnak (In re Rusnak)*, 110 B.R. 771 (Bankr. W.D.Pa.1990). The key factor to consider in regard to the duty to keep books is the complexity of the transactions involved. *Moffett v. Union Bank*, 378 F.2d 10, 100 (9th Cir.1967). Therefore, the Debtor had a greater responsibility to maintain accurate business records than the unsophisticated debtor. He failed to do so and failed to adequately explain this omission. Consequently, the Trustee and creditors cannot reasonably assess his financial state. The Debtor has engaged in gamesmanship by playing "catch me if you can" through selective disclosure. Thus, movants have met their burden of proof, and there is no genuine issue of fact as to whether the Debtor should be denied a discharge under § 727(a)(3).

### C. The § 727(a)(4) Cause of Action

Under § 727(a)(4), the Movants bear the burden of proof in establishing that:

(1) the debtor made a statement under oath,

(2) such statement was false

(3) the debtor knew the statement was false

(4) the debtor made the statement with fraudulent intent, and

---

8. "... Stanley, when he made his statement, was just wrong." Statement by Philip Mann, Attorney for the Debtor, Transcript at 12, Feb. 7, 1992. Mr. Mann is referring to the Debtor's initial statement that he didn't keep transaction records of a half a million dollar bank account under control of the Debtor. Deposition at 75–76, July 25, 1991. Mr. Mann asserted in the Feb. 7th court hearing that the Debtor had turned over the now existing documents to the trustee.

9. "The purpose of [727(a)(3) of the Bankruptcy Code] is to make the privilege of discharge dependent on a true presentation of the debtor's

financial affairs. "It was never intended that a bankrupt, after failure, should be excused from his indebtedness without showing an honest effort to reflect his entire business and not merely a part of it." (cite omitted)" *In re Rusnak*, 110 B.R. 771 at 775.

10. In addition, Wolfson was formerly married to Plaintiff Ripps, a tax partner at Cleary, Gottlieb, Steen & Hamilton, a prominent national law firm. His knowledge as to the niceties of business and procedural record keeping is presumptive.

288

(5) the statement related materially to the bankruptcy case.

*In re Sapru,* 123 B.R. 948 (Bankr.E.D.N.Y. 1990). The Movants state that the Debtor knowingly and fraudulently withheld business and financial records from the Trustee. The Movants allege that, in sworn deposition testimony, the Debtor has made fraudulent statements to the Trustee regarding his ownership of several corporations. Nisselson Affidavit at 4–5. The Debtor initially denied his involvement with several of the corporations and then subsequently admitted to his involvement. He attributed several of his deposition misstatements to lack of memory or mistake. Wolfson Declaration in Opposition to Summary Judgment at 2–3. The only consistency to the Debtor's responses and statements has been their inconsistency.

The case law indicates that no further evidence of fraud is necessary if a debtor's bankruptcy schedules reflect a "reckless indifference to the truth". *In re Gugliada,* 20 B.R. 524, 528 (Bankr.S.D.N.Y.1982). A false statement relates materially to a bankruptcy case if "it bears a relationship to the debtor's business transactions or estate, or concerns discovery of assets, business dealings or existence or disposition of his property," *American State Bank v. Montgomery (In re Montgomery),* 86 B.R. 948, 956 (Bankr.N.D.Ind.1988). The Debtor has repeatedly altered his answers to questions concerning his involvement with Kimberly Aviation, Warren Stanley Corp., and Key Copy. Initially, the Debtor contended that he never had any interest in these corporations. Wolfson Letter dated January 11, 1991. However, subsequently, at his deposition, the Debtor admitted that he owned both Kimberly Aviation and the Warren Stanley Corp. Wolfson Deposition Transcript at 50, 64. Later, he filed a supplement to his deposition conceding that he was in fact the President and Owner of Key Copy. The fresh start goal of the bankruptcy process is not meant to protect a dishonest debtor. The Debtor claims that several of his misstatements did not result in harm to the estate. However, "the determination of relevance and importance of the question is not for the debtor to make. It is the Debtor's role simply to consider the question carefully and answer it completely and accurately." *Guardian Indus. Prods., Inc. v. Diodati (In re Diodati),* 9 B.R. 804, 808 (Bankr.D.Mass.1981). The Debtor is not in a position to determine the relevance and importance of questions concerning the administration of the bankruptcy case. The statements made by the Debtor are to be taken collectively to determine whether they are of sufficient materiality to bar a discharge. The Debtor's lack of candor supports the Movant's § 727(a)(4) cause of action.

D. The § 727(a)(5) Cause of Action

■ The Movants claim that the Debtor failed to explain the disposition of approximately $500,000 which he had in an account at the Fidelity New York Savings and Bank Center in 1985. After attributing the disappearance of this money to lawyer fees in divorce proceedings, the Debtor stated that he kept no records of the disbursements.[11] He then recanted this testimony, explaining that his earlier statement was "simply wrong." He then stated that he had turned over all the monthly statements and cancelled checks for that account to the Trustee.[12] No evidence was produced to support this claim. In addition, as mentioned above, the Debtor produced no documentation regarding the disposition of the valuable clock.

The allegations required to support a claim under § 727(a)(5) are closely related to those necessary to support a claim under § 727(a)(3). *See United States v. Trogdon, (In re Trogdon),* 111 B.R. 655 (Bankr. N.D.Ohio 1990). The burden is on the Movants to establish that there exists an unexplained loss or deficiency of assets. The Movants have met this burden. Once this is established, the burden shifts to the debtor to provide a justifying explanation. "Vague and indefinite explanations of losses that are based upon estimates, uncorrob-

---

11. Deposition of Stanley Wolfson on July 25, 1991, at 75–76.

12. See footnote 7 above.

orated by documentation are unsatisfactory." *Id.* at 659. For summary judgment of a § 727(a)(5) claim, a court must consider the Debtor's explanation concerning the loss of assets evidence proffered by the debtor to substantiate the explanation. The debtor's explanation must convince the court of the debtor's business like conduct and good faith. *Harper,* 117 B.R. at 311. The explanation must appear reasonable such that the court "no longer wonders" what happened to the assets. *Trogdon,* 111 B.R. at 659.

This Court finds that the Debtor has not been forthright in his disclosure of assets and financial records throughout the proceedings. His own tax documents indicate different assessments as to his liability for certain years. He produced no documentation regarding the $500,000 bank account. A sophisticated debtor cannot explain away his involvement with corporations as a lack of memory or a misunderstanding. "Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory." *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 619 (11th Cir.1984). To earn a discharge a debtor is required to cooperate with the Court and all parties in interest. "[C]omplete disclosure is the touchstone in a bankruptcy case." *Continental Ill. Nat'l Bank & Trust Co. v. Bernard (In re Bernard),* 99 B.R. 563, 570 (Bankr.S.D.N.Y.1989). The Debtor's lack of cooperation justifies the conclusion that he should be denied a discharge under § 727(a)(5).

### E. The § 727(a)(6) Cause of Action

An order was signed on March 27, 1990, authorizing the Trustee to "caus[e] the vacatur and sale of the cooperative apartments". The Stipulation approved by such order provided that the Trustee "shall take all steps necessary to prepare and cause the sale of the [Apartment] ..., including, if necessary, the eviction of any occupants of the Apartment". This order did in fact direct the Debtor to vacate Apartment L and M at 140 Riverside Drive, New York, New York. The Order only contemplated further legal proceedings if considered necessary. The Order was served on the Debtor and the Debtor did not comply. The Trustee subsequently brought a separate motion to compel the Debtor to comply with the previous Order. The Debtor did not vacate the apartment until forced to do so by a U.S. Marshall after a second Order was issued on July 2, 1990. The Debtor, characteristically, posits that the Orders were not a command for affirmative action on his part but rather a determination of rights to the apartment enforceable by further proceedings if necessary.

Since the Debtor is denied a discharge under § 727(a)(3), (4) and (5), it is unnecessary to decide whether the § 727(a)(6) grounds for denial of discharge have also been met. The Debtor's evasiveness with regard to an order of this court simply serves to further support the denial of a discharge under the other provisions of § 727.

### IV. Conclusion

The Movants have met the burden of proof required for summary judgment. The Debtor's repeated misrepresentations to the Movants have violated the disclosure requirements of the Bankruptcy Code. "[T]he multitude of discrepancies, falsehoods and omissions taken collectively are of sufficient materiality to bar the Debtor's discharge." *In re Sapru,* 123 B.R. at 957. The Debtor has displayed an indifference to the bankruptcy process resulting in an inability to achieve an accurate assessment of his financial condition. "The courts have held that a reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge." *Id.* at 958. The Debtor has displayed such a reckless disregard and is not a debtor worthy of a discharge.

The motion for summary judgment is granted. The Debtor's discharge is denied.

It Is So Ordered.