**In re Thong TRAN and Ky Thi Vo, Debtors.**

**Felicia S. Turner, United States Trustee, Region 21, Plaintiff,**

v.

**Thong Tran and Ky Thi Vo, Defendants.**

**Bankruptcy No. 02–41532–PNS3. Adversary No. 02–80066.**

United States Bankruptcy Court, N.D. Florida, Pensacola Division.

Aug. 22, 2003.

---

Charles C. Garretson, Pensacola, FL, for debtor.

Charles Edwards, for U.S. Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

WILLIAM S. SHULMAN, Bankruptcy Judge.

This is an adversary proceeding in which Plaintiff Felicia S. Turner, United States Trustee for Region 21, seeks to deny the discharge of Defendants Thong Tran and Ky Thi Vo, the above Debtors, pursuant to Bankruptcy Code § 727(a)(3) and (5). The Plaintiff's Motion for Summary Judgment came on for hearing before the Court. Based on the following findings of fact and conclusions of law, the Court will issue its judgment denying the discharge of the Defendants:

### FINDINGS OF FACT

1. The Debtors, Thong Tran and Ky Thi Vo, filed a voluntary petition ("Petition") under Chapter 7 of the Bankruptcy Code on June 19, 2002 ("Filing Date"). The Debtors filed their Schedules of Assets and Liabilities ("Schedules") and Statement of Financial Affairs concurrently therewith. In August of 2002 the United States Trustee filed a complaint ("Complaint") objecting to Debtors' discharge pursuant to 11 U.S.C. § 727(a)(3) and (a)(5). The Debtors filed and served an answer dated February 6, 2003 ("Answer").

2. The Debtors listed assets of $47,985.00 and liabilities of $610,915.16 in their Schedules. The assets consisted of the Debtors' residence with a value of $45,000.00 and personal property with a value of $2,985.00. The personal property consisted of the following items: cash, $20.00; checking account, $50.00; household goods, $1,495.00; clothing, $500.00; jewelry, 2 watches, $20.00; 1986 Toyota Cresida, $400.00; and 1989 Dodge Caravan, $500.00. The Debtors' liabilities were listed as a secured debt (mortgage) on their residence in the amount of $39,907.28 and unsecured debt of $571,007.88 described overwhelmingly as "revolving credit card debt." The amount of the unsecured debt was changed to $431,524.88 in

the Amended Schedule F dated August 28, 2002.

3. In spite of the Debtors' large accrued debt, the Debtors averred on the Amended Statement of Financial Affairs that their income for 2000 was $13,000.00 and for 2001 was $13,000.00, attributable solely to the husband. The Debtors reported that they received income from no other source for the two years prior to the Filing Date. In addition, the Debtors reported combined monthly income of $777.27 and monthly expenses of $777.49 as of the Filing Date. On a yearly basis, the Debtors' income is $9,327.24 and their expenses are $9,329.88.

The Debtors specifically averred in their Statement of Financial Affairs that:

(a) They had no income other than from employment in the two years immediately preceding the commencement of the case.

(b) They paid no creditor more than $600 within 90 days immediately preceding the commencement of the case, and within one year immediately preceding the commencement of the case made no payments to or for the benefit of creditors who are or were insiders.

(c) They made no gifts or charitable contributions within one year immediately preceding the commencement of the case in excess of $200 in value.

(d) They had no losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of the case. This was amended on August 28, 2002 to show losses of "$15,000.00 to $20,000.00" for "Wife and Husband's gambling losses at various casinos in Mississippi in 2001" in the Amended Statement of Financial Affairs.

(e) They made no transfers of other property within one year immediate-ly preceding the commencement of the case.

(f) They had no financial accounts and instruments held in the names of the Debtors or for the benefit of the Debtors that were closed, sold, or otherwise transferred with one year immediately preceding the commencement of the case.

(g) They held no property for another person.

4. The United States Trustee filed a motion to dismiss the Debtors' bankruptcy case on August 22, 2002. In connection with this motion to dismiss, the United States Trustee served on each of the Debtors a Request for Production that requested the Debtors provide to the United States Trustee the following documents:

1. Federal income tax returns for the years 1999, 2000, and 2001.

2. Any and all documents which support the income and expenses reported on schedules I and J, including payroll stubs, and canceled checks, check registers, and bank statements for the six (6) months prior to the filing of this case.

3. Any and all documents related to the unsecured debts listed in Schedule F, including the purpose or nature of the debt.

5. The United States Trustee received the Response to the Request for Production by the Debtors Thong Tran and Ky Thi Vo dated August 26, 2002. The only documents provided were the Debtors' income tax returns for the years 1999, 2000, and 2001. The Response stated:

1. Enclosed is the income tax return for 1999, 2000, and 2001.

2. The Debtors have no documentation available to support their income and expenses as contained in schedules I and

J, and their checking account was closed approximately ten months ago.

3. The Debtors have not retained any of the statements for their unsecured debt as listed on Schedule F.

6. The tax returns provided to the United States Trustee show that the Debtors earned $9,888.00 in 1999, $10,300.00 in 2000, and $14,692.00 in 2001. The income tax return and W–2 forms for the year 1999 show $9,888.00 for income comprised of wages to Thong C. Tran of $8,034.00 from Tran's Automotive, and wages to Tran Thong of $1,854.00 from Lester Hall. There is no reported income for Debtor Ky Thi Vo, whose printed signature on the 1999 tax return is clearly "Ly Vo" and not Ky Thi Vo. The typed names on the first page of the 1999 tax return are "Thong C. Tran" and "Ly T. Vo."

7. The income tax return and W–2 forms for the year 2000 show $10,300.00 for income comprised of wages to Thong C. Tran of $2,266.00 from Tran's Automotive, and wages to Tran Thong of $8,034.00 from Lester Hall. There is no reported income for Debtor Ky Thi Vo, whose signature on the 2000 tax return again is "Ly Vo" and not Ky Thi Vo. The typed names on the first page of the 2000 tax return are "Thong C. Tran" and "Ly T. Vo."

8. The income tax return and W–2 forms for the year 2001 show $14,692.00 for income comprised of wages to Thong C. Tran of $2,266.00 from Tran's Automotive, wages to Tran Thong of $7,725.00 from Lester Hall, and other income stated to be "gambling winnings" of $4,701.00. There is no reported income for Debtor Ky Thi Vo. The Debtors did not provide a copy of the signature page for the 2001 tax return. The typed names on the first page of the 2001 tax return are "Thong C. Tran" and "Ly T. Vo."

9. The Statement of Financial Affairs does not state the same amount of income from employment as the tax returns for the years 2000 and 2001. The Statement of Financial Affairs states the Debtors had an income from employment of $13,000.00 for each of the years 2000 and 2001, which differs from the income tax return reported earnings from employment of $10,300.00 for 2000 and $9,991.00 for 2001. Likewise, the Statement of Financial Affairs shows no income from any other source for 2000 and 2001, which differs from the "gambling winnings" of $4,701.00 shown in the 2001 tax return. Instead, the Statement of Financial Affairs amended on August 28, 2002 shows a loss of "$15,000.00 to $20,000.00" for "Wife and Husband's gambling losses at various casinos in Mississippi in 2001".

10. Further, the Debtors' tax returns for the year 2000 and 2001 show they received a $3,888.00 tax refund in the year 2001 (tax return signed February 12, 2001) and a $3,674.00 tax refund in the year 2002 (notice from I.R.S. dated May 6, 2002). These tax refunds, some or all of which were an Earned Income Credit, are not listed on the Debtors' Statement of Financial Affairs.

11. The United States Trustee on December 23, 2002 served on the Debtors the United States Trustee's Interrogatories Directed to Defendants Thong Tran and Ky Thi Vo ("Interrogatories"). The Debtor Thong Tran answered these Interrogatories on February 11, 2003. According to the answers to the Interrogatories:

1. All of the claims of creditors of the Debtors are for credit card debt except for the mortgage on the house.

2. The Debtors had no earnings from employment in 2000 and 2001 other than the amounts shown in the tax returns for these years and there was no employer or compensation received for

Debtor Ky Thi Vo for the years 2000, 2001, and 2002.

3. The Debtors "do not remember" any money or income for the years 2000, 2001, and 2002 other than compensation from employment, including monies received in the form of cash advances on any credit card.

4. The stated disposition for all money and other income received by the Debtors in 2000, 2001, and 2002 other than compensation from employment but including monies received in the form of cash advances on any credit card was "[t]o buy things and take care of my family."

5. The response to the request to provide a list of all recorded information from which the financial condition or business transactions of the Debtors for the years 2000, 2001, and 2002 may be ascertained was "[d]oes not exist; did not keep record."

6. Attached to the Interrogatories was a copy of Amended Schedule F, a copy of the claims register with account numbers, and a copy of the credit cards issued to the Debtors. The Debtors were asked to state for each creditor shown in these attachments the following information for the years 2000, 2001, and 2002:(a) date credit first obtained; (b) date credit last obtained; (c) all funds received in the form of cash advances, with date and amount; and, (d) all property received with a value in excess of $200, with date and amount. The entire response/answer of the Debtors to this question is:

A listing of all the credit cards, photocopies of the cards, and amount owed is attached.

A) I do not remember when the cards were first obtained, I can estimate that I've been using these credit cards for about 10 years.

B) I do not remember when the credit cards were last obtained.

C) I do not remember, did not keep record.

D) [no response]

7. The stated disposition or use of the funds and property received in the years 2000, 2001, and 2002 from the creditors listed in Schedule F including cash advances from any credit card was "I used to buy things and take care of my family."

8. The stated explanation for any loss of assets or deficiency of assets by the Debtors to meet the liabilities listed in Schedule F was "I do not earn enough money to repay the creditors."

12. The United States Trustee served on the creditors listed in the Debtors' Schedule F Subpoenas for the production of documents. Documents were received in response to these Subpoenas on behalf of the following scheduled creditors:

First USA Bank; Gordon's Jewelers; Helzberg Diamonds; Zales; Citibank; Amoco; A T & T Universal Card; Lowes; Home Depot; Chase Bank; McRae's; Peoples Bank; Retailers National Bank (Target); Dillards; Bank of America; Best Buy; Fleet Bank; GM Card

13. The documents in response to the Subpoena to First USA Bank provided by First USA Bank, NA included separate applications for credit by Ly T. Vo and Thong Tran that stated the gross annual household income for the Debtors was $34,000.00 in March of 2000. The Debtors in their Statement of Financial Affairs stated an income of $13,000.00 for each of the years 2000 and 2001.

14. According to the documents provided by First USA Bank, NA, the Debtors each had an account. The First USA Visa statement for September of 2001 in the name of Ly T. Vo had a zero beginning

balance with available credit of $2,000.00, and shows a purchase at Sears for $1,504.99 on September 15, 2001. The October of 2001 statement shows a payment on the account of $1,728.90 on September 30 followed by an adjustment in the same amount for a returned check. An additional payment of $1,728.90 was credited to the account on October 9, 2001, again followed by an adjustment for a returned check on October 18, 2001, resulting in an ending balance on this account as of November 14, 2001 of $2,154.90.

15. The First USA Bank statement for June/July of 2001 in the name of Thong C. Tran had a beginning balance of zero with available credit of $5,000.00, and shows various purchases of $702.08. The statement with a closing date of August 10, 2001 has a balance of $979.15, and the statement with a closing date of September 12, 2001 has a balance owed of $1,375.32. The statement with a closing date of October 11, 2001 shows the following transactions:

| September 15 | Helzberg Diamonds | $2,868.93 |
| September 25 | Pen Air FCU, cash advance | $ 600.00 |
| September 25 | AT & T Wireless | $ 700.00 |
| October 1 | First Union, cash advance | $ 301.50 |
| October 1 | All Pro Sound | $2,000.00 |
| October 1 | EVA Air | $1,150.00 |

The statements with closing dates of October 11, 2001 and November 9, 2001 show payments on the account of $4,944.25 on September 30, $3,500.00 on October 5, $4,944.25 on October 9, and $3,500.00 on October 16. These statements also show that each of these payments was by a check that was later returned. As a result of these payments by checks that were later returned the debt incurred on the account exceeded the credit limit of $5,000.00. This resulted in an ending balance on this account as of November 9, 2001 of $9,466.27.

16. The documents in response to the Subpoena to Gordon's Jewelers provided by Citibank (South Dakota), N.A. included monthly statements for the account of Thong C. Tran showing a zero beginning balance with available credit of $1,500.00, a purchase of Rado watches on July 7, 2001 for $1,261.40, a $200.00 purchase on September 20, and a cash advance of $182.00 on September 30, 2001. These statements also show a payment on the account of $1,261.40 on September 29 followed by an adjustment in the same amount for a returned check, resulting in an ending bal-

ance on this account as of November 5, 2001 of $1,811.94.

17. The documents in response to the Subpoena to Helzberg Diamonds provided by Citibank (South Dakota), N.A. included monthly statements for the account of Thong C. Tran showing a zero beginning balance with available credit of $1,000.00, a transaction on September 15, 2001 in the amount of $1,000.00 for "jewelry or repairs", and an ending balance on this account as of November 6, 2001 of $1,029.00.

18. The documents in response to the Subpoena to Zales provided by Citibank (South Dakota), N.A. included monthly statements for the account of Thong C. Tran showing a zero beginning balance with available credit of $7,000.00, a transaction on September 2, 2001 in the amount of $5,815.15 for "princ signature coll", a transaction on September 15, 2001 in the amount of $1,100.00 for "dia sol earrings", and a cash advance on September 30, 2001 of $202.00. These statements also show a payment of $5,815.15 by a check that was later returned. This resulted in an ending

balance on this account as of November 5, 2001 of $7,186.26.

19. The Zales monthly statements for the account of Ly T. show a credit limit of $1,100.00, a beginning balance of $1,100.00, a transaction on October 1, 2001 in the amount of $1,100.00 for "cert sol ear", and a payment of $1,100.00 on September 29, 2001 by a check that was later returned. As a result of this payment by a check that was later returned the debt incurred on the account exceeded the credit limit of $1,100.00. This resulted in an ending balance on this account as of November 5, 2001 of $2,283.96.

20. The documents in response to the Subpoena to Citibank provided by Citibank (South Dakota), N.A. included an application and monthly statements for the account of Thong C. Tran that show a balance as of June 4, 2001 of $1,559.43 with available credit of $6,440.00 and a total credit line of $8,000.00. A balance transfer of $4,500.00 to Peoples Bank was posted on June 11, 2001. The October 3, 2001 statement shows transactions on September 5, 2001 for $300.00 for Home Depot and on September 19, 2001 for $945.96 for Sears, and a payment of $7,970.31 on September 27, 2001 by a check that was later returned. This resulted in an ending balance on this account as of November 2, 2001 of $7,899.31.

21. The Citibank application and monthly statements for the account of Ly T. Vo show a previous balance on the September 20, 2001 statement of $436.30 and a total credit line of $7,810.00. The September and October 2001 statements show the following transactions:

| | | |
|---|---|---|
| August 21 | balance transfer to MBNA | $5,400.00 |
| September 15 | Zales Jewelers | $ 329.75 |
| September 10 | cash advance through Pen Air FCU | $1,500.00 |
| October 3 | Circuit City | $3,171.23 |
| October 3 | WM Supercenter | $2,028.70 |
| October 3 | cash advance | $1,800.00 |

The October statement shows payments on the account of $7,697.14 on October 1 and $4,950.00 on October 5. The October and November statements also show that each of these payments was by a check that was later returned. As a result of these payments by checks that were later returned the debt incurred on the account exceeded the credit limit of $7,810.00. This resulted in an ending balance on this account as of November 20, 2001 of $15,295.07.

22. The documents in response to the Subpoena to Amoco provided by Citibank (South Dakota), N.A. included monthly statements for the account of Thong C. Tran showing a total credit line of $1,001.00 and a previous balance on the October 18, 2001 statement of $29.81. The October 2001 statement shows the following transactions:

| | | |
|---|---|---|
| September 25 | Pen Air FCU cash advance | $800.00 |
| October 3 | cash advance | $900.00 |
| October 11 | Jewelers Trade Shop | $950.00 |

The October statement shows payments on the account of $871.39 on October 2 and $900.00 on October 8. The November 18, 2001 statement shows that each of these payments was by a check that was later returned. As a result of these payments by checks that were later returned the debt incurred on the account exceeded the

credit limit of $1,001.00. This resulted in an ending balance on this account as of November 18, 2001 of $2,924.42.

23. The documents in response to the Subpoena to A T & T Universal Card provided by Citibank (South Dakota), N.A. included an application and monthly statements for the account of Thong C. Tran showing a balance as of June 4, 2001 of $417.89 with available credit of $4,582.00 and a total credit line of $5,000.00. The application from March of 2000 states the Debtors' annual household income to be $34,000. The monthly statements show the following transactions:

| June 14 | balance transfer check | $3,800.17 |
| September 15 | Pen Air FCU cash advance | $2,000.00 |
| September 20 | Whitehall Jewelers | $ 696.10 |
| October 5 | balance transfer check | $4,600.00 |
| October 11 | balance transfer check | $ 880.07 |

The October 3, 2001 statement shows a payment on the account of $6,805.59 on September 27. The November 2, 2001 statement shows that this payment was by a check that was later returned. As a result of this payment by a check that was later returned the debt incurred on the account exceeded the credit limit of $7,000.00. This resulted in an ending balance on this account as of November 2, 2001 of $12,587.08.

24. The A T & T Universal Card documents provided by Citibank (South Dakota), N.A. included 3 monthly statements for the account of Ly T. Vo showing a total credit line of $2,500.00 and a zero previous balance on the October 15, 2001 statement. The October 2001 statement shows the following transactions:

| September 15 | Pen Air FCU cash advance | $1,000.00 |
| September 20 | Whitehall Jewelers | $1,300.00 |
| October 3 | Circuit City | $1,365.48 |
| October 3 | cash advance | $1,000.00 |

The October 15, 2001 statement shows a payment on the account of $2,300.00 on October 1. The November 13, 2001 statement shows that this payment was by a check that was later returned. As a result of this payment by a check that was later returned the debt incurred on the account exceeded the credit limit of $2,500.00. This resulted in an ending balance on this account as of November 13, 2001 of $4,959.72.

25. The documents in response to the Subpoena to Lowes provided by Monogram Credit Card Bank of Georgia included an account summary for the account of Thong C. Tran showing a purchase of "tools—stationary laser levels" and "tools—saws-miter" for $1,360.95 and "tools—combo kits" and "tools—stationary" for $954.60 on September 29, 2001. The credit limit for this account was $2,500.00. A payment by check in the amount of $2,000.00 on September 27 was later returned. As a result of this payment by a check that was later returned the debt incurred on the account exceeded the credit limit of $2,500.00. This resulted in an ending balance on this account as of November 13, 2001 of $4,440.36.

26. The account summary for the Lowes account of Ly Vo shows a purchase of a GE electric range on September 16, 2001 for $500.00 and a handmade rug on October 26, 2001 for $450.00. The credit

limit for this account was $400.00. A payment by check in the amount of $500.00 on October 24 was later returned. As a result of this payment by a check that was later returned the debt incurred on the account exceeded the credit limit of $400.00. This resulted in an ending balance on this account as of December 13, 2001 of $1,037.06.

27. The documents in response to the Subpoena to Home Depot provided by Monogram Credit Card Bank of Georgia included an account summary for the account of Thong C. Tran showing the following purchases in 2001:

| September 5 | hardware | $2,063.93 |
| October 10 | hardware | $1,652.19 |
| October 10 | seasonal/garden | $ 857.85 |
| October 10 | kitchen and bath | $1,199.70 |

The credit line for this account was $4,000.00 according to the application. A payment by check in the amount of $3,750.00 on October 1 was later returned. As a result of this payment by a check that was later returned the debt incurred on the account exceeded the credit limit of $4,000.00. This resulted in an ending balance on this account as of October 26, 2001 of $7,925.71.

28. The application for the Home Depot account of Ly Thi Vo dated August 8, 2001 states an annual income of $34,000.00. A credit line of $1,250.00 was established for this account. The account summary shows purchases of $2,484.95 from August 25 thorough October 6, 2001. A payment by check in the amount of $1,251.38 on October 4 was later returned. As a result of this payment by a check that was later returned the debt incurred on the account exceeded the credit limit of $1,250.00. This resulted in an ending balance on this account as of October 26, 2001 of $2,515.88.

29. The documents in response to the Subpoena to Chase Bank provided by JP Morgan Chase Bank included monthly statements for the account of Thong C. Tran showing a previous balance of zero on June 19, 2001 statement and a credit line of $5,000.00. The monthly statements show the following transactions:

| May 22 | balance transfer | $1,870.00 |
| September 19 | Pen Air FCU cash advance | $1,500.00 |
| September 23 | Zales Jewelers | $1,800.00 |
| October 3 | WM Supercenter | $ 830.07 |
| October 4 | Home Depot | $ 637.44 |
| October 5 | China AI | $ 900.00 |
| October 6 | Kay Jewelers | $ 405.00 |
| October 6 | WM Supercenter | $ 821.50 |
| October 6 | Dillards | $1,000.00 |
| October 6 | Sears | $ 300.00, $67.72, $48.37 |

The October 19, 2001 statement shows payments on the account of $2,500.00 and $2,400.00 on October 1 and 4. The statements also show that these payments were by checks that were later returned. As a result of these payments by checks that were later returned the debt incurred on the account exceeded the credit line of $5,000.00. This resulted in an ending balance on this account as of November 19, 2001 of $10,450.04.

30. The monthly statements for the Chase Bank account of Ly T. Vo show a

total credit line of $3,500.00 and a zero previous balance on the June 22, 2001 statement. The monthly statements show the following transactions:

| | | |
|---|---|---|
| May 30 | balance transfer | $2,200.00 |
| September 22 | Pen Air FCU cash advance | $1,000.00 |
| September 23 | Zales Jewelers | $ 782.23 |
| October 6 | Marks & Morgan | $ 585.00 |
| October 6 | Sears | $ 150.00, $500.00 |

The October 24, 2001 statement shows a payment on the account of $1,500.00 on October 5. The November 23, 2001 statement shows that this payment was by a check that was later returned. As a result of this payment by a check that was later returned the debt incurred on the account exceeded the credit limit of $3,500.00. This resulted in an ending balance on this account as of November 23, 2001 of $5,263.87.

31. The documents in response to the Subpoena to McRae's provided by Saks Incorporated included monthly statements for the account of Thong C. Tran showing purchases of $585.14 in September of 2001 and $593.88 in October of 2001. The credit limit for this account was $600.00. A payment by check in the amount of $585.14 on October 13 was later returned. As a result of this payment by a check that was later returned the debt incurred on the account exceeded the credit limit of $600.00. This resulted in an ending balance on this account as of November 28, 2001 of $1,219.78.

32. The documents in response to the Subpoena to Peoples Bank provided by People's Bank included the application and monthly statements for the account of Thong C. Tran showing a balance as of September 14, 2001 of $553.42 with available credit of $8,046.00 and a total credit limit of $8,600.00. The application from September of 1999 states the Debtors' annual household income to be $34,000. The monthly statements show the following transactions:

| | | |
|---|---|---|
| September 15 | Ensley BC cash advance | $ 302.00 |
| September 21 | balance transfer check | $4,840.00 |
| September 24 | balance transfer check | $2,500.00 |

The October 14, 2001 statement shows a payment on the account of $8,204.48 on October 1. This payment was by a check that was later returned. This resulted in an ending balance on this account as of October 14, 2001 of $8,479.73.

33. The documents in response to the Subpoena to Retailers National Bank (Target) provided by Retailers National Bank include an application and monthly statements for the account of Thong C. Tran showing a previous balance on the October 9, 2001 statement of zero and a total credit limit of $3,900.00. The monthly statements show the following transactions:

| | | |
|---|---|---|
| September 23 | Zales Jewelers | $3,000.00 |
| September 25 | Regions Bank cash advance | $ 302.00 |
| October 13 | Circuit City | $ 500.00 |
| October 26 | Marks & Morgan | $ 585.00 |
| October 26 | Kay Jewelers | $ 405.00 |
| October 27 | Circuit City | $1,000.00 and $171.99 |
| October 27 | C & W–Isle of Capri cash advance | $ 523.99 |
| November 3 | Sears | $1,000.00, $617.02, $89.98 |
| November 3 | Home Depot | $1,266.43 |

The November 9, 2001 statement shows payments on the account of $3,393.84 on October 25 and $3,900.00 on November 1. The November 9 and December 9 statements show that each of these payments was by a check that was later returned. As a result of these payments by checks that were later returned the debt incurred on the account exceeded the credit limit of $3,900.00. This resulted in an ending balance on this account as of December 9, 2001 of $11,422.97.

34. The documents in response to the Subpoena to Dillards provided by Dillard National Bank included monthly statements for the account of Thong Tran showing a beginning balance of zero and purchases of $1,399.27 in August of 2001

and $1,372.16 in October of 2001. A payment by check in the amount of $1,196.30 on October 2 was later returned. This resulted in an ending balance on this account as of November 6, 2001 of $2,624.38.

35. The documents in response to the Subpoena to Bank of America provided by Bank of America N.A. USA included an application and monthly statements for the account of Thong C. Tran showing a previous balance of zero on the monthly statement dated September 17, 2001 and a total credit line of $9,500.00. The application from March of 2000 states the Debtors' annual household income to be $34,000. The monthly statements show the following transactions in 2001:

| | | |
|---|---|---|
| August 31 | balance transfer | $4,800.00 |
| September 15 | Bank of America cash advance | $ 300.00 |
| September 19 | Bank of America cash advance | $4,000.00 |
| September 25 | Regions Bank cash advance | $ 102.00 |
| October 3 | First American Bank cash advance | $3,000.00 |
| October 3 | Bank of America cash advance | $3,000.00 |
| October 4 | Home Depot | $1,117.32 |
| October 4 | WNB Florida cash advance | $2,000.00 |

The October 16, 2001 statement shows payments on the account of $9,245.51 on September 30 and $5,125.51 on October 8. The November 16, 2001 statement shows that these payments were by checks that were later returned. As a result of these payments by checks that were later returned the debt incurred on the account exceeded the credit limit of $9,500.00. This resulted in an ending balance on this

account as of November 16, 2001 of $19,169.05.

36. The application and monthly statements for the Bank of America account of Ly T. Vo show a total credit line of $6,500.00. The application from April of 2001 states the Debtors' annual household income to be $34,000. The monthly statements show the following transactions in 2001:

| | | |
|---|---|---|
| September 15 | Bank of America cash advance | $ 300.00 |
| September 21 | convenience check | $4,500.00 |
| September 25 | Regions Bank cash advance | $ 202.00 |
| September 25 | Pen Air FCU cash advance | $1,000.00 |
| October 3 | WM Supercenter | $1,123.09 |
| October 4 | Regions Bank cash advance | $ 302.00 |
| October 4 | Bank of America cash advance | $2,000.00 |
| October 5 | First American Bank cash advance | $1,500.00 |
| October 7 | Monsanto CU cash advance | $ 301.50 |

The October 22, 2001 statement shows payments on the account of $6,277.87 and $4,800.00 on October 8. The November 23, 2001 statement shows that these payments were by checks that were later returned. As a result of these payments by checks that were later returned the debt incurred on the account exceeded the credit limit of $6,500.00. This resulted in an ending balance on this account as of November 23, 2001 of $12,038.14.

37. The documents in response to the Subpoena to Best Buy provided by Household Retail Services, Inc. included "batch statement history" reports for the account of Thong Tran showing a purchase of "computers" on July 7, 2001 for $1,589.55

and on September 9, 2001 for $648.98. A payment by check in the amount of $2,170.32 on September 29 was later returned. This resulted in an ending balance on this account as of October 12, 2001 of $2,170.32.

38. The documents in response to the Subpoena to Fleet Bank provided by Fleet Credit Card Services, L.P. included an application and monthly statements for the account of L.T. Vo showing a total credit limit of $7,000.00. The application dated October 5, 1999 states the Debtors' yearly household income to be $34,000. The monthly statements show the following transactions in 2001:

| | | |
|---|---|---|
| September 2 | Marks & Morgan | $1,799.79 |
| September 3 | Rhodes | $ 500.00 |
| September 12 | balance transfer | $3,500.00 |
| September 23 | Zales Jewelers | $ 399.66 |
| October 1 | All Pro Sound | $3,000.00 |
| October 1 | Regions Bank cash advance | $2,000.00 |
| October 4 | Gulf Coast Batteries | $ 921.54 |
| October 5 | WM Supercenter | $ 564.48 |
| October 7 | Sears | $ 800.00 and $107.40 |

The October 17, 2001 statement shows payments on the account of $6,495.49 on September 30 and $4,900.00 on October 8. The October 17, 2001 statement also shows that these payments were by checks that were later returned. As a result of these payments by checks that were later returned the debt incurred on the account exceeded the credit limit of $7,000.00.

This resulted in an ending balance on this account as of October 17, 2001 of $14,627.97.

39. The monthly statements for the Fleet Bank account of Thong C. Tran show a total credit limit of $3,500.00. The monthly statements show the following transactions in 2001:

| | | |
|---|---|---|
| September 19 | Home Depot | $ 429.94 |
| October 1 | Regions Bank cash advance | $1,700.00 |
| October 1 | Sears | $1,500.00 |
| October 5 | cash advance | $1,500.00 |
| October 5 | Wal Mart | $ 982.63 and $407.12 |
| October 6 | Sears | $ 300.00 |
| October 7 | Monsanto cash advance | $ 101.50 |

The October 10, 2001 statement shows payments on the account of $3,464.73 on September 30 and $3,200.00 on October 3. The October 10 and November 8, 2001

statements also show that these payments were by checks that were later returned. As a result of these payments by checks that were later returned the debt incurred

on the account exceeded the credit limit of $3,500.00. This resulted in an ending balance on this account as of November 8, 2001 of $10,612.31.

40. The documents in response to the Subpoena to GM Card provided by Household Credit Services, Inc., the credit card issuer for Household Bank (SB) N.A., included an application and monthly state-ments for the account of Thong C. Tran showing a total credit limit of $4,000.00. The application from March of 2001 (account opened March 14, 2001) states Thong C. Tran's annual salary to be $28,000.00 and other household annual income to be $18,000.00. The monthly statements show the following transactions in 2001:

| September 15 | Monsanto cash advance | $ 301.50 |
| September 25 | Monsanto cash advance | $ 101.50 |
| October 4 | Regions Bank cash advance | $ 302.00 |
| October 4 | Wal Mart | $ 714.75 |
| October 4 | Lowe's | $1,462.70 |
| October 5 | EVA Air | $ 950.00 |

The October 11, 2001 statement shows payments on the account of $3,798.37 and $3,500.00 on October 1 and 9. The November 11, 2001 statement shows that these payments were by checks that were later returned. As a result of these payments by checks that were later returned the debt incurred on the account exceeded the credit limit of $4,000.00. This resulted in an ending balance on this account as of November 11, 2001 of $7,975.93.

41. The application and monthly statements for the GM Card account of Ly T. Vo show a total credit limit of $2,500.00. The application from June of 2001 (account opened June 27, 2001) states Ly T. Vo's annual salary to be $20,000.00 and other household annual income to be $55,000.00. The monthly statements show the following transactions in 2001:

| August 10 | credit card check | $2,140.00 |
| September 15 | Ensley BC cash advance | $ 302.00 |
| October 6 | Sears | $1,000.00, $822.37, $ 500.00, and $174.13 |

The October 22, 2001 statement shows payments on the account of $2,363.50 and $2,490.00 on October 5 and 10. The October 22, 2001 statement also shows that these payments were by checks that were later returned. As a result of these payments by checks that were later returned the debt incurred on the account exceeded the credit limit of $2,500.00. This resulted in an ending balance on this account as of October 22, 2001 of $4,987.70.

42. The Debtors disclosed annual income of $13,000.00 in their Statement of Financial Affairs for 2001 and $431,524.88 in general unsecured debt on Amended Schedule F. They listed personal property with a value of $2,985.00 as of the date of filing of June 19, 2002. Their Statement of Financial Affairs disclosed no gifts or charitable contributions in the year prior to filing; no losses from fire, theft, other casualty or gambling in the year prior to filing (amended on August 28, 2002 to show gambling losses of $15,000.00 to $20,000.00 for 2001); and no transfers of other property in the year prior to filing.

43. The Debtors' response to the United States Trustee's Requests for Production was that they maintain no documentation related to any of the unsecured debts

listed on Schedule F. The Debtors' answer to the United States Trustee's Interrogatories was that they "do not remember" any money or income received in 2000, 2001, and 2002 other than compensation from employment; that all monies received in the form of cash advances on any credit card was "[t]o buy things and take care of my family"; that no records exist from which the financial condition or business transactions of the Debtors for 2000, 2001, and 2002 may be ascertained; that the Debtors do not remember the funds received in the form of cash advances by date or amount for the years 2000, 2001, and 2002; and that the disposition of funds and property received in the years 2000, 2001, and 2002 from the Schedule F creditors was "I used to buy things and take care of my family."

44.  The responses received to the Subpoenas to the Schedule F creditors show the following purchases, cash advances, and other credit received by the Debtors in the year prior to filing of their chapter 7 case (all dates are for calendar year 2001):

**First USA Bank, NA**

| September 15 | Sears | $1,504.99 |
|---|---|---|
| September 15 | Helzberg Diamonds | $2,868.93 |
| September 25 | Pen Air FCU, cash advance | $ 600.00 |
| September 25 | AT & T Wireless | $ 700.00 |
| October 1 | First Union, cash advance | $ 301.50 |
| October 1 | All Pro Sound | $2,000.00 |
| October 1 | EVA Air | $1,150.00 |

**Gordon's Jewelers**

| July 7 | Rado watches | $1,261.40 |
|---|---|---|
| September 20 | purchase | $ 200.00 |
| September 30 | cash advance | $ 182.00 |

**Helzberg Diamonds**

| September 15 | "jewelry or repairs" | $1,000.00 |
|---|---|---|

**Zales**

| September 2 | "princ signature coll" | $5,815.15 |
|---|---|---|
| September 15 | "dia sol earrings" | $1,100.00 |
| September 30 | cash advance | $ 202.00 |
| October 1 | "cert sol ear" | $1,100.00 |

**Citibank**

| June 11 | balance transfer | $4,500.00 |
|---|---|---|
| September 5 | Home Depot | $ 300.00 |
| September 19 | Sears | $ 945.96 |
| August 21 | balance transfer to MBNA | $5,400.00 |
| September 15 | Zales Jewelers | $ 329.75 |
| September 10 | cash advance/Pen Air FCU | $1,500.00 |
| October 3 | Circuit City | $3,171.23 |
| October 3 | WM SuperCenter | $2,028.70 |
| October 3 | cash advance | $1,800.00 |

**Amoco**

| September 25 | Pen Air FCU cash advance | $ 800.00 |
|---|---|---|
| October 3 | cash advance | $ 900.00 |
| October 11 | Jewelers Trade Shop | $ 950.00 |

**AT & T Universal Card**

| September 15 | Pen Air FCU cash advance | $2,000.00 |
|---|---|---|

| September 20 | Whitehall Jewelers | $ 696.10 |
| October 5 | balance transfer check | $4,600.00 |
| October 11 | balance transfer check | $ 880.07 |
| September 15 | Pen Air FCU cash advance | $1,000.00 |
| September 20 | Whitehall Jewelers | $1,300.00 |
| October 3 | Circuit City | $1,365.48 |
| October 3 | cash advance | $1,000.00 |

**Lowes**

| September 29 | tools—stationary laser levels | |
| | tools—saws-miter | $1,360.95 |
| | tools—combo kits | |
| | tools—stationary | $ 954.60 |
| September 16 | GE electric range | $ 500.00 |
| October 26 | handmade rug | $ 450.00 |

**Home Depot**

| September 5 | hardware | $2,063.93 |
| October 10 | hardware | $1,652.19 |
| October 10 | seasonal/garden | $ 857.85 |
| October 10 | kitchen and bath | $1,199.70 |

**Chase Bank**

| May 22 | balance transfer | $1,870.00 |
| September 19 | Pen Air FCU cash advance | $1,500.00 |
| September 23 | Zales Jewelers | $1,800.00 |
| October 3 | WM Supercenter | $ 830.07 |
| October 4 | Home Depot | $ 637.44 |
| October 5 | China AI | $ 900.00 |
| October 6 | Kay Jewelers | $ 405.00 |
| October 6 | WM Supercenter | $ 821.50 |
| October 6 | Dillards | $1,000.00 |
| October 6 | Sears | $300.00, $67.72, $48.37 |
| May 30 | balance transfer | $2,200.00 |
| September 22 | Pen Air FCU cash advance | $1,000.00 |
| September 23 | Zales Jewelers | $ 782.23 |
| October 6 | Marks & Morgan | $ 585.00 |
| October 6 | Sears | $ 150.00 and $500.00 |

**McRae's**

| September | purchases | $ 585.14 |
| October | purchases | $ 593.88 |

**Peoples Bank**

| September 15 | Ensley BC cash advance | $ 302.00 |
| September 21 | balance transfer check | $4,840.00 |
| September 24 | balance transfer check | $2,500.00 |

**Retailers National Bank (Target)**

| September 23 | Zales Jewelers | $3,000.00 |
| September 25 | Regions Bank cash advance | $ 302.00 |
| October 13 | Circuit City | $ 500.00 |
| October 26 | Marks & Morgan | $ 585.00 |
| October 26 | Kay Jewelers | $ 405.00 |
| October 27 | Circuit City | $1,000.00 and $171.99 |
| October 27 | C & W–Isle of Capri cash advance | $ 523.99 |
| November 3 | Sears | $1,000.00, $617.02, $89.98 |
| November 3 | Home Depot | $1,266.43 |

**Dillards**

| | | |
|---|---|---|
| August | purchases | $1,399.27 |
| October | purchases | $1,372.16 |

**Bank of America**

| | | |
|---|---|---|
| August 31 | balance transfer | $4,800.00 |
| September 15 | Bank of America cash advance | $ 300.00 |
| September 19 | Bank of America cash advance | $4,000.00 |
| September 25 | Regions Bank cash advance | $ 102.00 |
| October 3 | First American Bank cash advance | $3,000.00 |
| October 3 | Bank of America cash advance | $3,000.00 |
| October 4 | Home Depot | $1,117.32 |
| October 4 | WNB Florida cash advance | $2,000.00 |
| September 15 | Bank of America cash advance | $ 300.00 |
| September 21 | convenience check | $4,500.00 |
| September 25 | Regions Bank cash advance | $ 202.00 |
| September 25 | Pen Air FCU cash advance | $1,000.00 |
| October 3 | WM Supercenter | $1,123.09 |
| October 4 | Regions Bank cash advance | $ 302.00 |
| October 4 | Bank of America cash advance | $2,000.00 |
| October 5 | First American Bank cash advance | $1,500.00 |
| October 7 | Monsanto CU cash advance | $ 301.50 |

**Best Buy**

| | | |
|---|---|---|
| July 7 | computers | $1,589.55 |
| September 9 | computers | $ 648.98 |

**Fleet Bank**

| | | |
|---|---|---|
| September 2 | Marks & Morgan | $1,799.79 |
| September 3 | Rhodes | $ 500.00 |
| September 12 | balance transfer | $3,500.00 |
| September 23 | Zales Jewelers | $ 399.66 |
| October 1 | All Pro Sound | $3,000.00 |
| October 1 | Regions Bank cash advance | $2,000.00 |
| October 4 | Gulf Coast Batteries | $ 921.54 |
| October 5 | WM Supercenter | $ 564.48 |
| October 7 | Sears | $800.00 and $107.40 |
| September 19 | Home Depot | $ 429.94 |
| October 1 | Regions Bank cash advance | $1,700.00 |
| October 1 | Sears | $1,500.00 |
| October 5 | cash advance | $1,500.00 |
| October 5 | Wal Mart | $ 982.63 and $407.12 |
| October 6 | Sears | $ 300.00 |
| October 7 | Monsanto cash advance | $ 101.50 |

**GM Card**

| | | |
|---|---|---|
| September 15 | Monsanto cash advance | $ 301.50 |
| September 25 | Monsanto cash advance | $ 101.50 |
| October 4 | Regions Bank cash advance | $ 302.00 |
| October 4 | Wal Mart | $ 714.75 |
| October 4 | Lowe's | $1,462.70 |
| October 5 | EVA Air | $ 950.00 |
| August 10 | credit card check | $2,140.00 |
| September 15 | Ensley BC cash advance | $ 302.00 |
| October 6 | Sears | $1,000.00, $822.37, $ 500.00, and $174.13 |

45. The Debtors received substantial amounts of personal property, jewelry, and cash in the summer and fall of 2001, less than a year prior to the filing of their chapter 7 petition on June 19, 2002. The Debtors failed to provide an explanation for the disposition of this personal property, jewelry, and cash.

## CONCLUSIONS OF LAW

The Motion for Summary Judgment is submitted in connection with an adversary proceeding brought pursuant to 11 U.S.C. §§ 727(a) and Rule 7001 of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr.P.") to deny the Debtors their discharge. The basis for the Motion is Fed. R.Civ.P. 56, as applied to the Bankruptcy Code ("Code") under Fed. R. Bankr.P. 7056. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1409(a).

With a summary judgment motion, the initial burden lies with the moving party to demonstrate the absence of any genuine issue of material fact. *United States v. Certain Funds on Deposit in Scudder Tax Free Inv. Account,* 998 F.2d 129, 131 (2d Cir.1993). "Once the Movant satisfies the requirements of Rule 56(c), the respondent must set forth specific facts establishing the existence of a genuine issue of material fact, mere allegations or denials of the movant's pleadings are insufficient." *In re Wolfson,* 139 B.R. 279, 281 (Bankr. S.D.N.Y.1992), *aff'd,* 152 B.R. 830 (S.D.N.Y.1993).

The non-moving party, in turn, "must do more than simply show that there is some metaphysical doubt as to the material facts." *In re Kablaoui,* 196 B.R. 705, 708 (Bankr.S.D.N.Y.1996) (*citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89

L.Ed.2d 538 (1986)). The non-movant must present specific, significant probative evidence supporting its case sufficient "to require a . . . judge to resolve the parties differing versions of the truth at trial." *In re Calstar, Inc.,* 159 B.R. 247, 251–52 (Bankr.D.Minn.1993) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (*quoting First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348.

Bankruptcy Code Section 727 provides, in pertinent part, that:

(a) The court shall grant the debtor a discharge, unless—

.        .        .        .        .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

Section 727(a)(3) is intended to allow the trustee and creditors to accurately determine the property in the debtor's estate and to compile a complete record of the debtor's relevant and material financial and business transactions. In order to state a prima facie case under § 727(a)(3), a creditor objecting to the discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition

and material business transactions. *Meridian Bank v. Alten*, 958 F.2d 1226, 1233 (3d Cir.1992) (*citing Matter of Decker*, 595 F.2d 185, 187 (3d Cir.1979)); [1] *Wolfson*, 139 B.R. at 286.

In this case, the Debtors kept *no* records of their financial affairs. They were unable to provide any documentation to the United States Trustee in response to the Request for Production other than copies of tax returns. The Debtors took *no* action to obtain any documents. The only records concerning the Debtors' financial affairs were obtained by the United States Trustee through subpoenas to the creditors listed on Schedule F. The United States Trustee met the initial burden in showing that the Debtors failed to maintain and preserve adequate records, and that such failure made it impossible to ascertain the Debtors' financial condition and material business transactions. *Meridian Bank*, 958 F.2d at 1233.

Once the United States Trustee has met this burden, the burden shifts to the Debtors to demonstrate that the failure to maintain books and records was justified under the circumstances. *Wolfson*, 139 B.R. at 286–287. For purposes of a summary judgment motion, the Court must assume facts in a light most favorable to the Debtors. Therefore, the Court may properly conclude that the Debtors are completely unsophisticated with respect to record keeping and financial matters.

An unsophisticated debtor should not be required to keep "an impeccable system of book keeping ... or records so complete that they could satisfy an expert in business." *In re Esposito*, 44 B.R. 817, 826 (Bankr.S.D.N.Y.1984)(quoting *Johnson v. Bockman*, 282 F.2d 544, 546 (10th Cir. 1960)). However, such a debtor must keep "available written evidence made and preserved from which the present financial condition of the [debtor], and his business transactions for a reasonable period in the past may be ascertained." *Id.* at 827 (*citing Decker*, 595 F.2d at 187, *quoting In re Underhill*, 82 F.2d 258, 260 (2d Cir.), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936)); *see also Keamy v. Hyder (In re Hyder)*, 38 B.R. 467, 471 (Bankr. D.Mass.1984) (a debtor has a duty to take reasonable precautions to preserve financial records).

Courts and creditors should not be required to speculate as to the financial history or condition of a debtor, nor should they be compelled to reconstruct a debtor's affairs. *In re Juzwiak*, 89 F.3d 424, 426, 429 (7th Cir.1996) ("[T]he bankruptcy court erred in holding § 727(a)(3) was satisfied because [the creditor] *could have* organized [the debtor's] records, hired an accountant, and interviewed [the debtor] or obtained missing information from [the debtor's] customers.") (emphasis added). Further, the United States Trustee need not rely upon unsubstantiated, vague, and undocumented statements regarding the source of funds and details of disbursements, such as the Debtors' responses to discovery in this case. Rather, the United States Trustee is entitled to written documentation of important pieces of information. *Juzwiak*, 89 F.3d at 429.

1. Unlike under previous law, § 727(a)(3) does not require a party objecting to the discharge to demonstrate that reasonable grounds exist for believing that the bankrupt has committed acts which would prevent his discharge in bankruptcy. The Code now only requires that the creditor make an initial showing that the debtor's records are inadequate; thereafter, the burden is on the debtor to prove justification. *Id.* The logic for the change in the law was that the previous law put the objector in the difficult and anomalous position of trying to prove a negative by showing the absence of any justification. *Id.*

The Debtors have failed to meet their burden, as they have apparently neglected to keep *any* books and records from which their financial affairs can be ascertained. As a matter of sound bankruptcy policy, even the most unsophisticated debtor must retain and promptly produce documentation to support averments in the Petition, Schedules and Statement of Affairs. It has long been the law that the privilege of discharge depends upon the debtor's disclosure of a true and accurate picture of its financial affairs. *Underhill,* 82 F.2d at 260. Accordingly, the United States Trustee should be granted summary judgment on the issue of whether the Debtors have concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records, and papers, from which the Debtors' financial condition or business transactions might be ascertained, and the Debtors' discharge should be denied under § 727(a)(3).

Bankruptcy Code Section 727 provides, in pertinent part, that:

> (a) The court shall grant the debtor a discharge, unless—
>
> .        .        .        .        .
>
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

In actions brought under this subsection, the plaintiff has a preliminary burden of adducing evidence that demonstrates that the debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors. *In re Hermanson,* 273 B.R. 538, 545 (Bankr.N.D.Ill.2002) (*citing Banner Oil Co. v. Bryson (In re Bryson),* 187 B.R. 939, 955 (Bankr.N.D.Ill.1995)). If the objector makes this showing, the debtor then has the burden of establishing a "satisfactory" explanation for the asset reduction. *Id.* As with § 727(a)(3), the debtor should not offer a general oral explanation for the disappearance of substantial assets without documentary corroboration. *Hermanson,* 273 B.R. at 549.

This Court may grant summary judgment under § 727(a)(5) of the Code. *Wolfson,* 139 B.R. at 288 (also noting that the allegations required to support a claim under § 727(a)(5) are closely related to those necessary to support a claim under § 727(a)(3)). The court is not concerned with the wisdom of the debtor's disposition of assets but is concerned with the truth, detail, documentation and completeness of the debtor's explanation of loss. *In the Matter of D'Agnese,* 86 F.3d 732, 735 (7th Cir.1996); *In re Bodenstein,* 168 B.R. 23, 33 (Bankr.E.D.N.Y.1994) for purposes of § 727(a)(5), a debtor's explanation of what happened to assets "must convince the bankruptcy judge that a debtor has not hidden or improperly shielded [them]." That means " 'that the court, after having heard the excuse, the explanation, has the mental attitude which finds contentment in saying he believes the explanation—he believes what the [debtors] say with reference to the disappearance or the shortage. He is satisfied. He no longer wonders. He is contented.' " *Id.* (*quoting In re Shapiro & Ornish,* 37 F.2d 403, 406 (N.D.Tex.1929), *aff'd sub nom. Shapiro & Ornish v. J.J. Holliday,* 37 F.2d 407 (5th Cir.1930)).

In this case, the Debtors have failed to provide information regarding credit card debt totaling $431,524.88, including information on their purchases of personal property and jewelry, and the cash advances obtained in the year prior to the filing of their chapter 7 petition. As stated in the Findings of Fact, the Debtors

have provided conflicting statements or material omissions regarding their financial affairs. Accordingly, the United States Trustee should be granted summary judgment on the issue of whether the Debtors failed to satisfactorily explain their loss of assets, and the Debtors' discharge should be denied under 11 U.S.C. § 727(a)(5).

## CONCLUSION

There is no genuine issue of material fact with respect to the issues set forth in the Complaint. The Debtors have concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records, and papers, from which the Debtors' financial condition or business transactions might be ascertained, and the Debtors' discharge should be denied under § 727(a)(3). In addition, the Debtors failed to satisfactorily explain their loss of assets, and the Debtors' discharge should be denied under 11 U.S.C. § 727(a)(5).

The United States Trustee's Motion for Summary Judgment is granted, and the Court will enter a separate judgment denying the discharge of the Debtors.

## JUDGMENT DENYING DISCHARGE

The Court having entered Findings of Fact and Conclusions of Law on the United States Trustee's Motion for Summary Judgment, it is

ORDERED that the discharge of Thong Tran and Ky Thi Vo shall be, and hereby is, denied pursuant to Bankruptcy Code § 727(a)(3) and (5).